

August 28, 2017

*Via ECF and Facsimile*

The Honorable Gabriel W. Gorenstein
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *Cengage Learning, Inc. v. Book Dog Books, LLC*, 1:16-cv-7123 (WHP)(GWG)

Dear Judge Gorenstein:

Third party, Chegg Inc. ("Chegg"), writes in response to the Court's request at the August 21, 2017 hearing that the party producing the documents designated as "Highly Confidential" and produced by plaintiffs in the above-captioned litigation[1] come forward and state the basis for precluding defendants' president, David Dimm, from viewing material that is proprietary to Chegg and which Chegg produced with the understanding that it would be treated as highly confidential/attorneys' eyes only based on the protective order in place in this action. Because Chegg has serious concerns regarding Mr. Dimm's access to this highly competitive information, Chegg respectfully requests that the materials maintain their "Highly Confidential" status and be treated as such pursuant to the terms of the protective order negotiated by the parties, entered by this Court, and relied upon by Chegg in producing the documents at issue.

### I.    Factual Background

    **a.**  *Book Dog* **Litigations**

As the Court is aware, this case ("*Book Dog II*") is a continuation of a prior case, *John Wiley & Sons, Inc., et al. v. Book Dog Books, LLC, et al.*, No. 13-cv-00816 (WHP)(GWG) ("*Book Dog I*"), and the two cases have been consolidated for trial. The Court in *Book Dog I* entered a Stipulated Protective Order (Dkt. No. 30-1) ("Protective Order"), a two-tiered

---

[1] It is Chegg's understanding that defendants have requested in discovery, and plaintiffs intend to produce, the results of subsequent audits conducted by plaintiffs of the inventory made available through Chegg.com, which include the same types of sensitive, competitive information at issue in the current dispute. Chegg maintains its objections to the disclosure of those additional documents to Mr. Dimm (along with anyone else not entitled to view the documents under the terms of the Protective Order).

CHEGG, INC.
3990 Freedom Circle
Santa Clara, CA 95054
T 1-888-99-CHEGG
F 408-855-8954
www.chegg.com



CHEGG, INC.
3990 Freedom Circle
Santa Clara, CA 95054
T 1-888-99-CHEGG
F 408-855-8954
www.chegg.com

protective order that governed the use of Confidential and Highly Confidential material produced in the case. The parties in *Book Dog II* subsequently agreed to extend the Protective Order from *Book Dog I* to *Book Dog II*, and the Court entered the Stipulated Order Extending Protective Order in this case. Dkt. No. 32.

Paragraph 4(b)(ii) of the Protective Order permits disclosure of "Confidential" information to "a Party's in-house counsel and its in-house personnel with responsibility for anti-piracy matters whose access to the information is reasonably required to supervise, manage or participate in this case." Paragraph 4(d) provides for disclosure of "Highly Confidential" information to the same category of in-house counsel and in-house anti-piracy personnel *provided* that that person "does not have decision making authority over pricing, selection of customers, or selection of distributors…" and signs a "copy of a signed undertaking in the form of Appendix 1 to this Order." Mr. Dimm, defendants' president, provided such an undertaking during *Book Dog I*, when he was merely "VP, Inventory," not president, as he is now.

### b. Chegg Does Business with and Competes with Defendants

Chegg is a distributor of textbooks, including those published by plaintiffs. Among many other distributors, Chegg does business with, but also competes with, defendants.

Chegg's involvement as a third party in the *Book Dog* litigations began when the publisher-plaintiffs discovered that some counterfeit inventory had somehow ended up in Chegg's possession. Chegg was not only surprised by this finding, but also eager to identify the source of the counterfeit merchandise, as it obtains its inventory from a number of distributors, including defendants in this case. In the course of doing so, Chegg entered into an agreement with the publishers, pursuant to which it provided to the publishers, on a "Highly Confidential" basis, information that would assist in identifying the sources of the counterfeit inventory. These documents, mainly in the form of lengthy spreadsheets, are the documents at issue in this discovery dispute.

### II.   Legal Argument

The documents at issue in this dispute were properly designated as "Highly Confidential" and the Protective Order should not be modified to allow Mr. Dimm to view the documents.



CHEGG, INC.
3990 Freedom Circle
Santa Clara, CA 95054
T 1-888-99-CHEGG
F 408-855-8954
www.chegg.com

### a. The Documents Produced by Chegg Contain Highly Sensitive Information that Defendants Could Use to Their Competitive Advantage

Paragraph 2(g) of the Protective Order provides that "Highly Confidential" materials are those that constitute "current or future business or technical trade secrets and plans more sensitive or strategic than Confidential information, the disclosure of which is likely to significantly harm that Person's competitive position, or the disclosure of which would contravene an obligation of confidentiality to a third Person or to a Court."

The documents at issue fall squarely within this definition. The documents Chegg provided to plaintiffs specifically reveal the identity of, and information about, other individuals and companies with whom Chegg does business and the nature and extent of Chegg's relationships with each of its business partners, including pricing information. The information is proprietary and would give a direct competitor, such as defendants, an unfair advantage, as it reflects the size of the inventory Chegg keeps, the size of Chegg's business, the turnover rate (i.e. the number of rentals or sales on the same books), the scope of Chegg's working relationship with its distribution partners, and the size of the counterfeit challenge in the inventory owned by one of Chegg's distribution partners.

Moreover, with respect to some of the individuals with whom Chegg does business, Chegg also has its own confidentiality obligations pursuant to its contracts and its Privacy Policy.

In other words, the documents at issue reveal all of Chegg's sources of books, including, but certainly not limited to, defendants. Because Chegg is both a competitor of and does business with defendants, revealing this type of source information to a key decision maker, such as Mr. Dimm, not only contravenes the clear language of the Protective Order, but is also very likely to cause significant competitive harm to Chegg in its future dealings with defendants and other distributors. Indeed, it is Chegg's understanding that defendants have themselves designated information such as customer lists as "Highly Confidential" under the Protective Order and have similarly limited access to those documents.

Courts in this and other circuits have recognized that when the sensitive information of a third party is at issue, "the risk of harm to non-parties from disclosure is significant due to their inability to be present at day-to-day proceedings. . ." *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 2017 U.S. Dist. LEXIS 62732, *7, 2017 WL 1483548 (W.D.N.Y.



CHEGG, INC.
3990 Freedom Circle
Santa Clara, CA 95054
T 1-888-99-CHEGG
F 408-855-8954
www.chegg.com

Apr. 25, 2017) (quoting *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342 (N.D. Ill. 2008)); *see also EEOC v. Kronos Inc.*, 694 F.3d 351, 368 (3d Cir. 2012) (finding no error in providing additional protection to business interests of a third party); *Crane Plastics Co. v. Louisiana-Pac. Corp.*, 119 F. Supp. 2d 749, 751 (S.D. Ohio 2000) ("[T]he Court assigns greater weight to the confidentiality interests asserted by a non-party to the litigation. . . ."). Furthermore, "it is appropriate to provide additional protections for non-parties who are uninvolved in the day-to-day litigation of this matter and, therefore, are disadvantaged with respect to their ability to protect their business interests." *Steuben Foods, Inc.*, 2017 U.S. Dist. LEXIS 62732, at *7. Chegg respectfully requests that the Court do so here.

    **b. The Protective Order Should Not be Modified to Allow Mr. Dimm to View the Documents because Chegg Relied on the Existence of the Protective Order in Providing Plaintiffs with its Sensitive Information**

    Prior to producing the documents at issue in this case, Chegg was aware of the provisions of the Protective Order regarding the designation of "Highly Confidential" documents, as well as the limitations on who could have access to documents designated as "Highly Confidential." In reliance on these restrictions, Chegg produced the documents at issue and designated them as "Highly Confidential." Chegg further relied on the fact that Mr. Dimm (and anyone in his current position) did not have access to documents produced in *Book Dog I* and that defendants did not object to his previous lack of access. Had there not been this Protective Order in place, or if defendants had challenged this designation in *Book Dog I*, Chegg would have retained counsel to seek a protective order to avoid producing these documents or to produce them only in redacted form.

    If the Court were to modify the Protective Order to now allow a key decision maker like Mr. Dimm to have access to "Highly Confidential" documents, Chegg will be highly prejudiced because of its reasonable reliance on the court-ordered terms of the Protective Order. *See, e.g., Allen v. City of New York*, 420 F. Supp. 2d 295, 300 (S.D.N.Y. 2006) ("[t]he Second Circuit has stated broadly that it is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." (internal quotes and citations omitted); *Giuffre v. Maxwell*, No. 15 Civ. 7433, 2017 U.S. Dist. LEXIS 67584, at *5 (S.D.N.Y. May 3, 2017) (denying request to modify blanket protective order where the parties, multiple deponents, and third party witnesses "have reasonably relied on the Protective Order in giving testimony and producing documents"); *Medical Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*,

4



No. 06 Civ. 7764 (CS) (THK), 2009 U.S. Dist. LEXIS 60979, at *11 (S.D.N.Y. July 16, 2009) (concluding that "Defendants and various third-parties reasonably relied upon the protections contained in the Confidentiality Order in producing their discovery").

Because the documents at issue were designated in good faith as "Highly Confidential" and Chegg relied on the Protective Order in producing the Highly Confidential documents, the Protective Order should be enforced and Mr. Dimm be precluded from viewing the documents

Respectfully submitted,

/s/ Dana Jewell

Dana Jewell
Senior Corporate Counsel

cc: all counsel via ECF

CHEGG, INC.
3990 Freedom Circle
Santa Clara, CA 95054
T 1-888-99-CHEGG
F 408-855-8954
www.chegg.com