**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> BOOK DOG BOOKS, LLC d/b/a TEXTBOOKRUSH and TEXTBOOKSRUS, APEX MEDIA, LLC, AND ROBERT WILLIAM MANAGEMENT, LLC, <br><br> Defendants. | Case No: 16-cv-7123 (WHP) (GWG) <br><br> **PROPOSED JURY INSTRUCTIONS AND FACTUAL ALLEGATIONS FOR DEFENDANTS' AFFIRMATIVE DEFENSES** |

In compliance with the Court's July 28, 2017 Order (Dkt. 383), Defendants Book Dog Books, LLC Apex Media, LLC, and Robert William Management, LLC (together, "Defendants") respectfully submit the following proposed jury instructions and factual allegations specifically associated with their affirmative defenses.

Defendants note that this filing is not meant to be taken as a full proposal for overall jury instructions and Defendants intend to propose additional instructions prior to trial. The parties have not yet engaged in any discussions in effort to arrive at agreed language for jury instructions. The proposed instructions provided here are presented with the understanding and expectation that the parties may ultimately agree to further refinements of the language or that the Court may require certain language revisions.

## **FIRST DEFENSE**
### **(Personal Jurisdiction)**

Defendants do not seek an instruction to the jury that the court lacks personal jurisdiction. Defendants reserve their right to pursue a motion on this topic at or before the time of trial pursuant to Fed. R. Civ. P. 12.

## **SECOND DEFENSE**
### **(Venue)**

Defendants do not seek an instruction to the jury that this case is improperly venued.

Defendants reserve their right to pursue a motion on this topic at or before the time of trial

pursuant to Fed. R. Civ. P. 12.

## THIRD DEFENSE
### (Subject Matter Jurisdiction)

Defendants do not seek an instruction to the jury that the Court lacks subject matter jurisdiction.  Defendant notes that this defense cannot be waived and that if, at any time, the Court finds that it lacks subject matter jurisdiction, it is required to dismiss this action pursuant to Fed. R. Civ. P. 12(h)(3).

## **FOURTH DEFENSE**
### **(Invalidity)**

Defendants do not seek an instruction to the jury that Plaintiffs' Copyright and Trademarks are invalid and/or unenforcable.  Defendants reserve their right to pursue a motion on this topic at or before the time of trial pursuant to Fed. R. Civ. P. 12.

## **FIFTH DEFENSE**
## **(DMCA 17 U.S.C. § 512)**

Defendants do not seek an instruction to the jury that Plaintiffs' claims are barred by the

Digital Millennium Copyright Act, 17 U.S.C. § 512 *et sec*.  Defendants reserve their right to

pursue a motion on this topic at or before the time of trial pursuant to Fed. R. Civ. P. 12.

## <u>SIXTH DEFENSE</u>
### <u>(Abandonment)</u>

Defendants do not seek an instruction to the jury that Plaintiffs' abandonment of their copyrights and trademarks constitutes an affirmative defense.

## SEVENTH DEFENSE
### (Failure to State a Claim)

Defendants do not seek an instruction to the jury that failure to state a claim constitutes an affirmative defense.  Defendants reserve their right to pursue a motion on this topic at trial pursuant to Fed. R. Civ. P. 12(h)(2)(C).

## EIGHTH DEFENSE
### (First Sale Defense, 17 U.S.C. § 109)

**Proposed Instructions**:

The exclusive right to distribute a particular copy of a copyrighted work under the Copyright Act extends only to the first sale (or other transfer of ownership) of the copy. Once title to a copy passes through a first sale (or other transfer of ownership) by the copyright holder, the owner of that copy may transfer it to another person, through sale or otherwise, without the copyright owner's permission.

To establish the "first sale" defense to infringement of Plaintiffs' distribution right, Defendants must prove each of the following elements by a preponderance of the evidence:

First, you must find that the copy that Defendants transferred was lawfully made under the Copyright Act.

And second, you must find that Defendants owned the copy or were authorized by the owner of the copy to transfer it to another person.

If you find that Defendants have proved the above elements by a preponderance of the evidence, your verdict must be for Defendants on the claim for infringement of Plaintiffs' exclusive right to distribute the copyrighted work.

**Factual Allegations**:

The Plaintiffs sell their textbooks directly to many distributors, under contracts that permit unsold textbooks to be returned.

Plaintiffs' distributors have, from time to time, returned textbooks to Plaintiffs that are counterfeit – this is, copies whose production was not authorized by Plaintiffs and that were not printed in accordance with Plaintiffs' manufacturing standards.  While Plaintiffs are aware of this phenomenon, they do not rigorously inspect returns prior to reselling them.

9

Because of these counterfeit returns, an "inauthentic" copy of one of Plaintiffs' works may actually have been sold by the Plaintiffs at some point during its history, even if its original manufacture was not authorized.  While such a copy may not adhere to Plaintiffs' manufacturing standards and may otherwise appear "counterfeit," it would nevertheless be a "lawful" copy of Plaintiffs works, since Plaintiffs themselves, as copyright holders, had the authority to lawfully distribute it.  Once sold by Plaintiffs, any subsequent purchaser would not infringe Plaintiffs' copyrights or trademarks by reselling or otherwise redistributing the work, under the First Sale Doctrine.

Further, Plaintiffs do not print their books.  Instead, they license third-parties to print and/or distribute their books.  Sometimes, the third-parties print and/or distribute more books than Plaintiffs are aware that they printed and/or distributed.  Because the third-parties were expressly licensed to print and/or distribute these books, any subsequent sale of these books by Defendants is protected under the first sale doctrine.

**<u>Legal Sources</u>:** Court of Appeals for the Eleventh Circuit Pattern Jury Instructions § 9.26 [2013]; 17 U.S.C. § 109.

## **NINTH DEFENSE**
### **(Corporate Shield Doctrine)**

Defendants do not seek an instruction to the jury that this doctrine constitutes an affirmative defense.

## <u>TENTH DEFENSE</u>
### <u>(Failure to Plead Copyrights/Trademarks with Particularity)</u>

Defendants do not seek an instruction to the jury that Plaintiffs' claims have not been pled with particularity.  Defendants reserve their right to pursue a motion on this topic at or before the time of trial pursuant to Fed. R. Civ. P. 12.

**ELEVENTH & TWELFTH DEFENSES**
**(Good Faith/Innocent Infringement)**

**Proposed Instructions**:

If you find for the Plaintiffs on the Plaintiffs' copyright infringement claim, you must

determine the Plaintiffs' damages.  The Plaintiffs seek a statutory damage award, established by

Congress for each work infringed.  Its purpose is to penalize the infringer and deter future

violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than

$30,000 for each work you conclude was infringed.

However, if you find the infringement was innocent, you may award as little as

$200 for each work innocently infringed.

An infringement is considered innocent when the defendant has proved both of the

following elements by a preponderance of the evidence:

1.      the defendant was not aware that its acts constituted infringement of the

copyright; and

2.      the defendant had no reason to know that its acts constituted an infringement of

the copyright.

**Factual Allegations**:

Defendants do not intentionally distribute counterfeit textbooks.  To the contrary,

Defendants have spent significant resources building a best-in-class set of counterfeit detection

processes, procedures, and training techniques.  Defendants train all of their front-line warehouse

employees in counterfeit detection and require that the trainings be repeated on a regular basis.

Defendants employ several full-time staff members who devote substantial portions of their time

and attention to supervising, auditing, and improving Defendants' counterfeit detection.  This

13

includes not merely improving detection techniques, but also identifying titles most likely to be counterfeited and suppliers most likely to supply counterfeit goods.  Defendants routinely "blacklist" sellers that have provided them with counterfeit goods.

These policies and practices are as good or better than those found at other used book distributors in the United States and meet or exceed what could be considered commercially reasonable.  To the extent that Defendants have distributed any counterfeit books, it has been in spite of their best efforts and innocent.

**Legal Sources:** Court of Appeals for the Ninth Circuit Pattern Jury Instructions §§ 17.25, 17.26 (2014); Court of Appeals for the Eleventh Circuit Pattern Jury Instructions § 9.32 (2013); 17 U.S.C. § 504(c).

## THIRTEENTH DEFENSE
### (Excessive Statutory Damages)

**Proposed Instructions**:

The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments.  If you find for the Plaintiffs on the Plaintiffs' copyright infringement claim and award statutory damages, the Due Process Clause provides that those damages cannot be totally disproportionate to the actual harm caused by Defendants' conduct.  One indication of a disproportionate or excessive statutory damages award is its ratio to the actual harm inflicted on the plaintiff.

**Factual Allegations**:

Plaintiffs have sought an award of statutory damages that exceeds twenty million dollars. Plaintiffs' actual damages are not in reasonable proportion to such an award, indeed to the extent Plaintiffs have suffered any damages at all, they are multiple orders of magnitude less than the damages that they seek.

**Legal Sources**: *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996); *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("in a sufficiently serious case," due process may require courts to reduce a statutory-damage award); *In re Napster*, Nos. C MDL-00-1369 MHP & C 04-1671 MHP, 2005 WL 1287611, at *10 (N.D. Cal. June 1, 2005) ("a number of courts have recognized that an award of statutory damages may violate due process if the amount of the award is 'out of all reasonable proportion' to the actual harm caused by a defendant's conduct"); *DirecTV v. Gonzalez*, No. Civ.A.SA-03-1170 SR, 2004 WL 1875046, at *4 (W.D. Tex. Aug. 23, 2004) ("it may be that a statutory damages provision that grossly exceeds any actual damages would violate due process as 'an irrational and arbitrary deprivation of the property of the defendant.'").

## FOURTEENTH DEFENSE
### (First Amendment)

Defendants do not seek an instruction to the jury that Plaintiffs' claims are barred by the

First Amendment to the United States Constitution.

## FIFTEENTH DEFENSE
### (Alter Ego/Piercing the Corporate Veil]

Defendants do not seek an instruction to the jury that alter ego/piercing the corporate veil

constitutes an affirmative defense.

## **SIXTEENTH DEFENSE**
### **(Lack of Consideration)**

Defendants do not seek an instruction to the jury that Plaintiffs' contract claims are barred by lack of consideration.

## **SEVENTEENTH DEFENSE**
### **(Condition Precedent)**

Defendants do not seek an instruction to the jury that the lack of fulfillment of a condition precedent constitutes an affirmative defense.

## EIGHTEENTH DEFENSE
### (Fraudulent Inducement)

**Proposed Instructions**:

Defendants claim the contract between themselves and Plaintiffs is unenforceable because it was induced by fraud.

A contract cannot be enforced if one of the parties to the contract fraudulently induced the other party into entering into the contract. A person fraudulently induces another when he or she makes a knowingly false statement to convince the other person to agree to a contract.

You must find in favor of Defendants and against Plaintiffs on Plaintiffs' breach of contract claim if Defendants show, by clear and convincing evidence:

1. That Plaintiffs made a false statement;

2. That Plaintiffs knew that the statement was false;

3. That the false statement was material to Defendants' decision to enter into the contract with Plaintiffs;

4. That Defendants relied upon Plaintiffs' false statement in entering into the contract with Plaintiffs; and

5. That Defendants suffered harm as a result of entering into the contract.

**Factual Allegations**:

Plaintiffs represented to Defendants that after entering into the settlement agreement at issue in this action Defendants would be provided with aid and assistance in detecting counterfeit books and the distributors that sell them.  This information was valuable, as counterfeit books cost Defendants money, both directly (in the form of counterfeits detected in inventory which cannot be sold) and indirectly (in the form of litigation in the event that counterfeit books are inadvertently sold).  While this promise of cooperation was not actionable under the settlement

20

agreement, it was a material inducement but for which Defendants would not have signed the contract.

Plaintiffs never intended to provide this assistance, and indeed, have internal policies against revealing the promised information.  Because Defendants relied upon Plaintiffs' representations, they settled claims for which they had legitimate defenses and undertook obligations that have formed the basis of Plaintiffs' breach of contract claims.

**Legal Sources**:  *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) ("A plaintiff seeking to invalidate a [contract] due to fraudulent inducement must establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury"); *Sokolow v. Lacher*, 299 A.D.2d 64, 70 (1st Dep't 2002) ("To sustain a claim for fraudulent inducement, there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury").

## __NINETEENTH DEFENSE__
### __(Public Policy)__

Defendants do not seek an instruction to the jury that the contract at issue is void on public policy grounds.

## TWENTIETH DEFENSE
### (Mistake)

Defendants do not seek an instruction to the jury that the contract at issue is void on the grounds of mistake.

## <u>TWENTY-FIRST DEFENSE</u>
### <u>(Repudiation)</u>

Defendants do not seek an instruction to the jury that the contract at issue is void on the grounds of repudiation.

## TWENTY-SECOND DEFENSE
### (Failure to Provide Notice or Opportunity to Cure)

Defendants do not seek an instruction to the jury that Plaintiffs' claims are barred by their failure to provide notice of breach and/or an opportunity to cure.

## TWENTY-THIRD DEFENSE
### (Prevention of Performance)

**Proposed Instructions**:

Defendants claim that, to the extent that they failed to carry out the obligations of the contract, they were prevented from doing so by Plaintiffs themselves.

A party to a contract may not complain of the nonperformance of the other party where that performance is prevented by his own actions.

You must find in favor of Defendants and against Plaintiffs on Plaintiffs' breach of contract claim if Defendants show that Plaintiffs rendered it impossible to fulfill the obligations that they now claim Plaintiffs breached.

**Factual Allegations**:

Plaintiffs represented to Defendants that after entering into the settlement agreement at issue in this action Defendants would be provided with aid and assistance in detecting counterfeit books and the distributors that sell them.  Plaintiffs then refused to do so.

Further, Plaintiffs have taken steps that make it much more difficult to identify counterfeit books.  For instance, Plaintiffs have used cheaper printing materials in an effort to cut costs, failed to implement technologies that make it much easier to detect counterfeits, and sold print-on-demand and loose-leaf books, the authenticity of which is virtually impossible to determine.

Without the information that Plaintiffs promised to provide, Defendants were forced to develop their own anti-counterfeiting techniques and processes.  While Defendants have developed a best-in-class set of counterfeit detection processes, procedures, and training techniques, their detection efforts would be improved if Plaintiffs had cooperated in providing information about known counterfeits and counterfeiters and if Plaintiffs had manufactured their

books in a manner that permitted distributors to easily discern authenticity.  To the extent that

Defendants were not perfectly successful in identifying all counterfeit textbooks in their

inventory, this 100% success rate was frustrated and rendered impossible by Plaintiffs' own

conduct.

**Legal Sources:**  *In re WorldCom, Inc.*, 492 B.R. 696, 703 (Bankr. S.D.N.Y. 2013) ("The doctrine of prevention of performance dictates that "[h]e who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned.") (*quoting R.H. Stearns Co. v. United States*, 291 U.S. 54, 61 (1934)); *Barrows v. Maco, Inc.*, 419 N.E.2d 634, 639 (Ill. 1981) ("A party to a contract may not complain of the nonperformance of the other party where that performance is prevented by his own actions."); *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 141 P.3d 459, 477 (Haw. 2006) ("It is an implied condition of every contract that one party will not prevent performance by the other party, and thus one party who prevents another party from performing under the contract cannot complain about or recover damages from the non-performance which he himself has brought about. To prevail on the affirmative defense, Plaintiffs must prove that their non-performance of the contract was through no fault of the Plaintiffs and that Defendant Hale Lokahi, Ltd., without legal excuse, actually prevented Plaintiffs from performing.").

## TWENTY-FOURTH DEFENSE
### (Supervening / Intervening Cause)

Defendants do not seek an instruction to the jury that a supervening or intervening cause represents an affirmative defense.

## **TWENTY-FIFTH DEFENSE**
### **(Immunity)**

Defendants do not seek an instruction to the jury that Plaintiffs' claims are barred by a statutory immunity.

<u>**TWENTY-SIXTH DEFENSE**</u>
<u>**(Statute of Limitations / Laches)**</u>

<u>**Proposed Instruction**</u>

*Copyright*

Defendants claim that Plaintiffs' copyright claim is barred, in whole or in part, by the statute of limitations, which is a time limit for bringing a claim.

To establish that the statute of limitations bars Plaintiffs' copyright claim, Defendants must prove by a preponderance of the evidence that Plaintiffs filed their lawsuit more than three years after the date of sale.

Each act of infringement is a separate harm that creates an independent claim for relief. The statute of limitations prevents Plaintiffs from recovering remedies for any infringing acts that occurred more than three years before Plaintiffs filed their lawsuit.

In this case Plaintiffs filed a lawsuit for one set of works on Feb. 4, 2013. Plaintiffs filed a lawsuit for another set of works on May 27, 2015.  Plaintiffs filed a lawsuit for a third set of works on September 12, 2016.  You have been given a list showing which works were included in each lawsuit.

For works included in the first lawsuit, the statute of limitations prevents Plaintiffs from recovering remedies for infringing acts that occurred before February 4, 2010.  For works included in the second lawsuit, the statute of limitations prevents Plaintiffs from recovering remedies for infringing acts that occurred before May 27, 2012.  For works included in the third lawsuit, the statute of limitations prevents Plaintiffs from recovering remedies for infringing acts that occurred before September 12, 2013.

*Contract*

Defendants contend that Plaintiffs are not entitled to recover damages for the alleged breaches of contract that occurred before it filed a lawsuit because: (1) Plaintiffs delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Defendants have been or will be prejudiced in a significant way due to Plaintiffs' delay in filing the lawsuit. This is referred to as laches. Defendants must prove delay and prejudice by a preponderance of the evidence.

 Whether Plaintiffs' delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches.

In this case Plaintiffs filed a lawsuit for one set of works on Feb. 4, 2013. Plaintiffs filed a lawsuit for another set of works on May 27, 2015. Plaintiffs filed a lawsuit for a third set of works on September 12, 2016.  You have been given a list showing which works were included in each lawsuit.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if Defendants suffered material prejudice as a result of the delay. Prejudice to Defendants can be evidentiary or economic.

Whether Defendants suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Plaintiffs not being able to present a full and fair defense on the merits to Plaintiffs' fraud and breach of contract claims. Not being able to present a full and fair defense on the merits to a claim can occur due to the loss of important records, the death or impairment of an important witnesses, the unreliability of

memories about important events because they occurred in the distant past, or other similar types of things.

Economic prejudice is determined by whether or not Defendants changed their economic position in a significant way during the period of delay resulting in losses beyond merely compensating Defendants for their damages, and also whether Defendants' losses as a result of that change in economic position likely would have been avoided if Plaintiffs had filed this lawsuit sooner.

In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. You may also find that even though the elements of laches have been established, it should not in fairness apply given all the facts and circumstances in this case.

*Trademark*

In addition, Defendants contend that Plaintiffs are not entitled to recover damages for trademark infringement, trademark counterfeiting, false designation of origin, or illegal importation of trademarked goods that occurred before it filed a lawsuit because: (1) Plaintiffs delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Defendants have been or will be prejudiced in a significant way due to Plaintiffs' delay in filing the lawsuit. This is referred to as laches. Defendants must prove delay and prejudice by a preponderance of the evidence.

 Whether Plaintiffs' delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and

that material prejudice resulted.  This presumption shifts the burden of proof to Plaintiffs to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if Plaintiffs present such evidence, the burden of proving laches remains with Defendants. Laches may also be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Defendants.

In this case Plaintiffs filed a lawsuit for one set of works on Feb. 4, 2013.  Plaintiffs filed a lawsuit for another set of works on May 27, 2015. Plaintiffs filed a lawsuit for a third set of works on September 12, 2016.  You have been given a list showing which works were included in each lawsuit.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if Defendants suffered material prejudice as a result of the delay. Prejudice to Defendants can be evidentiary or economic.

Whether Defendants suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Plaintiffs not being able to present a full and fair defense on the merits to Plaintiffs' trademark infringement, trademark counterfeiting, false designation of origin, and illegal importation of trademarked goods claims. Not being able to present a full and fair defense on the merits to these claims can occur due to the loss of important records, the death or impairment of an important witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.

Economic prejudice is determined by whether or not Defendants changed their economic position in a significant way during the period of delay resulting in losses beyond merely paying damages. For instance, if Defendants could have switched to a noninfringing product if sued

earlier or whether Defendants' losses as a result of that change in economic position likely would

have been avoided if Plaintiffs had filed this lawsuit sooner.

In all scenarios though, the ultimate determination of whether laches should apply in this

case is a question of fairness, given all the facts and circumstances. You may also find that, even

though the elements of laches have been established, it should not in fairness apply given all the

facts and circumstances in this case.

*Trademark Dilution*

Defendants claim that Plaintiffs' trademark dilution claim is barred, in whole or in part,

by the statute of limitations, which is a time limit for bringing a claim.

To establish that the statute of limitations bars Plaintiffs' trademark dilution claim,

Defendants must prove by a preponderance of the evidence that Plaintiffs failed to file their

lawsuit within three years after they knew or, in the exercise of reasonable diligence, should have

known about the dilution.

Each act of dilution is a separate harm that creates an independent claim for relief. The

statute of limitations only prevents Plaintiffs from recovering remedies for diluting acts that

occurred more than three years before Plaintiffs filed their lawsuit.

In this case Plaintiffs filed a lawsuit for one set of works on Feb. 4, 2013. Plaintiffs filed

a lawsuit for another set of works on May 27, 2015. Plaintiffs filed a lawsuit for a third set of

works on September 12, 2016.  You have been given a list showing which works were included

in each lawsuit.

For works included in the first lawsuit, the statute of limitations prevents Plaintiffs from

recovering remedies for diluting acts that occurred before February 4, 2010.  For works included

in the second lawsuit, the statute of limitations prevents Plaintiffs from recovering remedies for

diluting acts that occurred before May 27, 2012.  For works included in the third lawsuit, the statute of limitations prevents Plaintiffs from recovering remedies for diluting acts that occurred before September 12, 2013.

**Factual Allegations**:

Plaintiffs' Second Amended Complaint includes numerous copyrighted works that were available on the market prior to September 12, 2013, including:

- Principles of Instrumental Analysis, 6th edition

- The Art of Public Speaking, 11th edition

- Biological Science, 5th edition

- Business Statistics, 9th edition

- Campbell Biology in Focus, 1st edition

- Campbell Biology, 10th edition

- Enterprise Systems for Management, 2nd edition

- Statistics for Managers, 7th edition

- The Social Work Experience, 6th edition

Defendants denying having sold any counterfeit copies of these titles.  But to the extent that counterfeit copies were inadvertently distributed by Defendants, the copies in question were distributed prior to September 12, 2013, and thereby fall outside the relevant limitations period.

Similarly, Defendants deny having distributed counterfeit works bearing the trademarks asserted by Plaintiffs.  But to the extent that counterfeit copies were inadvertently distributed by Defendants, the copies in question were distributed prior to September 12, 2013 and thereby fall outside the relevant limitations period.

**Legal Sources:**  Court of Appeals for the Eleventh Circuit Pattern Jury Instructions § 9.26 (2013); 17 U.S.C. § 507(b) (providing a 3-year statute of limitations on any claim under the Copyright Act); *Petrella v. MGM*, 134 S. Ct. 1962, 1969 (2014) ("A copyright claim thus arises or accrues when an infringing act occurs."); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191-92 (2d Cir. 1996); *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 380–81 (S.D.N.Y. 2010); Federal Circuit Bar Association Pattern Patent Jury Instructions § 5.2 [2012]; *In re Estate of Barabash*, 31 N.Y.2d 76, 81 (1972) ("Laches is defined as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity."); Federal Circuit Bar Association Pattern Patent Jury Instructions § 5.2 (2012); 15 U.S.C. § 1125(C); *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000) ("The applicable statute of limitations for plaintiff's second cause of action, trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c)(1), is three years.").

## **TWENTY-SEVENTH DEFENSE**
### **(Duties Not Owed)**

Defendants do not seek an instruction to the jury that the lack of a legal duty constitutes an affirmative defense.

## TWENTY-EIGHTH DEFENSE
### (Lack of Damages)

Defendants do not seek an instruction to the jury that lack of damages evidence constitutes an affirmative defense.

## TWENTY-NINTH DEFENSE
### (Lack of Standing)

**Proposed Instruction:**

Defendants claim that the Plaintiffs do not have the legal rights necessary to bring their copyright claims. The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.

If Defendants can show for any individual work that Plaintiffs are neither the owner of the copyright nor the exclusive licensee, then you must find in favor of Defendants for any copyright claims involving that work.

**Factual Allegations:**

The copyrighted works at issue in this case are identified on Exhibit A to Plaintiffs' Amended Complaint.  Of those, the following are not owned by any of the named Plaintiffs:

- Interpersonal Conflict, 7th Edition

- Communcating in Groups: Applications and Skills, 7th Edition

- Macroeconomics: Principles, Problems, and Policies, 19th Edition

- Critical Thinking, 8th Edition

- Puntos de Partida: An Invitation to Spanish, 9th Edition

- The Art of Public Speaking: 11th Edition

Since none of the named Plaintiffs own the copyright to these titles, any claims against Defendants for copyright infringement relating to said titles must fail.

**Legal Sources:**   *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."); 17 U.S.C.A. § 501(b) ("The legal or beneficial owner of an exclusive right under a

copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

## THIRTIETH DEFENSE
### (Copyrights/Trademark Misuse)

**Proposed Instruction**

Defendants also assert as an affirmative defense that Plaintiffs have misused their copyrights and trademarks. Copyright or trademark misuse occurs when a copyright or trademark holder attempts to use its copyright or trademark in an expression of an idea to control or prevent other expressions of that idea. A copyright or trademark may not be used improperly to inhibit another person's freedom of expression. An improper use of copyright can arise when a party wrongfully claims copyright protection that it does not have by misrepresenting the scope and content of its alleged copyrights. No party can use the limited grant that a copyright confers to gain control over elements of expression over which it has no rights.

If you find that Defendants have proven by a preponderance that Plaintiffs misused their copyrights or trademarks to control or prevent the expression of ideas over which they had no rights, you must find that Plaintiffs engaged in copyright or trademark misuse, and must find against Plaintiffs and in favor of Defendants on the infringement and/or dilution claims relating to the copyrights and trademarks that were misused. In considering the affirmative defense of copyright or trademark misuse, Defendants do not have to show that they were injured by the misuse.

**Factual Allegations**:

Plaintiffs have improperly attempted to use their copyright monopolies to exert control over and extract tolls from, the secondary market for their works.  Plaintiffs have formed an organization called the "Educational Publishers Enforcement Group" ("EPEG") which promulgates so-called "Anti-Counterfeit Best Practices" and publishes a list of used book sellers that adhere to these practices.  EPEG keeps both lists at http://www.stopcounterfeitbooks.com/

41

EPEG has attempted to convince important secondary market textbook customers, such as college bookstores, not to buy used textbooks from any companies that do not adhere to these so-called "Best Practices."  EPEG uses its control over the supply of new textbooks to force such buyers to comply.  In doing so, it is EPEG's goal to use its market power to force all used book sellers to conform to its "Best Practices."

Critically, these "Best Practices" do not actually include techniques for identifying counterfeit books, but instead require used compliant used book sellers to submit to regular and costly inventory inspections by EPEG.  These inspections are a revenue source for the Plaintiffs, who extort cash from any distributors whose inventory is found to contain counterfeit books, even if no such books have been sold.  The "Best Practices" also requires used book sellers to police the pricing of new textbooks, ratting out any distributor who sells a new textbook for less than 90% of MSRP.  Additionally, the "Best Practices" require used book sellers to deliver all potentially counterfeit books that they come across to the EPEG, to take a loss on the purchase price of those books, and to bear all shipping and transportation costs for the potentially counterfeit book at the book seller's own expense.

In addition, the Plaintiffs have orchestrated an illegal and anti-competitive group boycott of Defendants.  Plaintiffs, coordinating their behavior through counsel, each ceased selling books to Defendants at essentially the same time.

**Legal Source**:  Nimmer on Copyright § 39.01 at Form 39-4 (2015); *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 102 (2d Cir. 2000) ("Group boycotts, or concerted refusals to deal have long been held to be per se antitrust violations") (internal marks omitted) (*quoting Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959)); *Malibu Media, LLC v. Guastaferro*, Case No. 1:14-cv-1544, 2015 U.S. Dist. LEXIS 99217 (E.D. Va. July 28, 2015) ("violations of antitrust law or other anti-competitive behavior has been found to be an example of copyright misuse").

## THIRTY-FIRST DEFENSE
## (Copyrights/Trademarks Procured By Fraud)

Defendants do not seek an instruction to the jury that the copyrights or trademarks at issue were procured by fraud.

## THIRTY-SECOND DEFENSE
### (Unclean Hands/Bad Faith)

**Proposed Instruction**

Defendants have raised as affirmative defenses that Plaintiffs have come into court with unclean hands. The doctrine of unclean hands is invoked when a litigant seeking relief has committed some unconscionable act, has acted in bad faith, has acted fraudulently, or who by deceit or any unfair means has gained an advantage. If you find any such violation of good faith or conscience, then you should find that the respective party or parties have acted with unclean hands.

Conduct that defrauds and conduct that demonstrates an intent to defraud, even if the intent could not be accomplished, are sufficient to constitute unclean hands. A person who has committed an intentional dishonest act in connection with that person's relationship to another would also have unclean hands.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation. Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.

**Factual Allegations**:

Plaintiffs have improperly attempted to use their copyright monopolies to exert control over and extract tolls from, the secondary market for their works. Plaintiffs have formed an organization called the "Educational Publishers Enforcement Group" ("EPEG") which promulgates so-called "Anti-Counterfeit Best Practices" and publishes a list of used book sellers that adhere to these practices. EPEG keeps both lists at http://www.stopcounterfeitbooks.com/

EPEG has attempted to convince important secondary market textbook customers, such as college bookstores, not to buy used textbooks from any companies that do not adhere to these so-called "Best Practices."  EPEG uses its control over the supply of new textbooks to force such buyers to comply.  In doing so, it is EPEG's goal to use its market power to force all used book sellers to conform to its "Best Practices."

Critically, these "Best Practices" do not actually include techniques for identifying counterfeit books, but instead require used compliant used book sellers to submit to regular and costly inventory inspections by EPEG.  These inspections are a revenue source for the Plaintiffs, who extort cash from any distributors whose inventory is found to contain counterfeit books, even if no such books have been sold.  The "Best Practices" also requires used book sellers to police the pricing of new textbooks, ratting out any distributor who sells a new textbook for less than 90% of MSRP.  Additionally, the "Best Practices" require used book sellers to deliver all potentially counterfeit books that they come across to the EPEG, to take a loss on the purchase price of those books, and to bear all shipping and transportation costs for the potentially counterfeit book at the book seller's own expense.

In addition, the Plaintiffs have orchestrated an illegal and anti-competitive group boycott of Defendants.  Plaintiffs, coordinating their behavior through counsel, each ceased selling books to Defendants at essentially the same time.

**Legal Sources:** *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) ("New York courts have long applied the maxim that one who comes to equity must come with clean hands. Courts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is directly related to the subject matter in litigation and has injured the party attempting to invoke the doctrine.") (internal citations omitted); *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 102 (2d Cir. 2000) ("Group boycotts, or concerted refusals to deal have long been held to be per se antitrust violations") (internal marks omitted) (*quoting Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959)); *Malibu Media, LLC v. Guastaferro*, Case No. 1:14-cv-1544,

2015 U.S. Dist. LEXIS 99217 (E.D. Va. July 28, 2015) ("violations of antitrust law or other anti-competitive behavior has been found to be an example of copyright misuse").

## **THIRTY-THIRD DEFENSE**
### **(Waiver/Release/Estoppel)**

Defendants do not seek an instruction to the jury concerning the affirmative defenses of waiver, release, or estoppel.

## THIRTY-FOURTH DEFENSE
### (Attorney's Fees)

Defendants do not seek an instruction to the jury that attorney fees and costs constitute an

affirmative defense.

## THIRTY-FIFTH DEFENSE
## (Substantial Performance)

**Proposed Instruction**

As you have heard, Plaintiffs entered into a contract with Defendants in which Defendants promised to stop importing counterfeit textbooks. Defendants claim that they substantially performed all of their obligations under the contract and that, to the extent you may find that Defendants breached the contract by importing some counterfeit textbooks, any breaches of the contract were minor, inadvertent, and incidental. Plaintiffs claim that Defendants did not substantially perform their obligations under the contract and that Defendants are liable for a breach.

You must decide whether or not Defendants substantially performed their obligations under the contract, thus overcoming the claimed breach of contract. In order to prove substantial performance, Defendants must show that any failure to fulfill their obligations properly was minor in nature and not intentional.

There is no simple test for determining whether substantial performance has been rendered and several factors must be considered, including the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance.

**Factual Allegations**:

Defendants have (at least) substantially complied with their obligation not to distribute counterfeit books. To be clear, Defendants do not intentionally distribute counterfeit textbooks. To the contrary, Defendants have spent significant resources building a best-in-class set of

counterfeit detection processes, procedures, and training techniques that they use throughout

their business.  Defendants train all of their front-line warehouse employees in counterfeit

detection and require that the trainings be repeated on a regular basis.  Defendants employ

several full-time staff members who devote substantial portions of their time and attention to

supervising, auditing, and improving Defendants' counterfeit detection.  This includes not merely

improving detection techniques, but also identifying titles most likely to be counterfeited and

suppliers most likely to supply counterfeit goods.  Defendants routinely "blacklist" sellers that

have provided them with counterfeit goods.

These policies and practices are as good or better than those found at other used book

distributors in the United States and meet or exceed what could be considered commercially

reasonable.  To the extent that Defendants have distributed any counterfeit books, it has been in

spite of their best efforts and was not intentional.

**Legal Sources:**  New York Pattern Jury Instructions ("PJI") § 4:20.1 [2014]; *Hadden v. Consolidated Edison Co.*, 34 N.Y.2d 88, 96 (1974) ("There is no simple test for determining whether substantial performance has been rendered and several factors must be considered, including the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance.").

## THIRTY-SIXTH DEFENSE
### (Preemption)

**Proposed Instruction**:

Defendants claim that Plaintiffs' contract is preempted by the copyright act.  Under

Section 301 of Copyright Act a claim is pre-empted, that is to say, it cannot be brought, if (i) the

work at issue comes within the subject matter of copyright and (ii) the right being asserted is

equivalent to any of the exclusive rights within the general scope of copyright.

If you find that Plaintiffs' contract claims are equivalent to the claims they have asserted

under the Copyright act, you must find for Defendants on the breach of contract claims.

**Factual Allegations**:

Plaintiffs' breach of contract claims are pled in an identical fashion to their copyright

claims and allege that Defendants violated the contract by committing copyright infringement.

Such a claim is preempted by the copyright act itself.

**Legal Sources**: *We Shall Overcome Foundation, v. The Richmond Organization, Inc.*, 221 F.Supp.3d 396, 410-13 (S.D.N.Y. 2016) (Cote, J.) ("There is a two-prong test for a preemption analysis.  Section 301 of the Copyright Act preempts a state law claim if: (i) the work at issue comes within the subject matter of copyright and (ii) the right being asserted is equivalent to any of the exclusive rights within the general scope of copyright.") (internal marks omitted);*Archie MC, Inc. v. Elsevier, Inc.*, Case No 16-cv-6614, 2017 WL 3421167, at *11 (S.D.N.Y. Mar. 13, 2017) (Rakoff, J.) ("The Copyright Act expressly preempts a state law claim 'if (i) the work at issue come[s] within the subject matter of copyright' and (ii) the right being asserted is equivalent to any of the exclusive rights within the general scope of copyright.'") (internal marks omitted) (*quoting Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012)); *Canal+Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 446 (S.D.N.Y. 2011) (Holwell, J.) (dismissing contract claim as preempted because the licensing rights at issue stemmed from the Copyright Act).

## **THIRTY-SEVENTH DEFENSE**
### **(Fair Use)**

Defendants do not seek an instruction to the jury that the fair use doctrine applies.

## THIRTY-EIGHTH DEFENSE
### (Prior Material Breach)

Defendants do not seek an instruction to the jury that Plaintiffs' prior material breaches constitute an affirmative defense.

## __THIRTY-NINTH DEFENSE__
### __(Accord and Satisfaction)__

Defendants do not seek an instruction to the jury concerning the affirmative defense of accord and satisfaction.

## **FORTIETH DEFENSE**
## **(Assumption of Risk)**

Defendants do not seek an instruction to the jury concerning the affirmative defense of assumption of risk.

## **FORTY-FIRST DEFENSE**
### **(Contributory/Comparative Negligence)**

Defendants do not seek an instruction to the jury concerning the affirmative defense of contributory or comparative negligence.

## FORTY-SECOND DEFENSE
### (License)

**Proposed Instruction**:

Defendants claim that Plaintiffs granted them a license to use Plaintiffs' copyrighted work.  A license is a contract giving someone permission to use the work.  A license doesn't have to be in writing.  Rather, as alleged here, a license can be implied from conduct.  To establish this defense, Defendant must prove each of the following by a preponderance of the evidence:

First, you must find that Plaintiffs created the work, or caused it to be created, at Defendant's request or the request of someone acting on Defendants's behalf.

Second, you must find that Plaintiffs delivered the work, or caused it to be delivered, to Defendants or someone acting on Defendants' behalf.

And third, you must find that Plaintiffs intended that Defendants or someone acting on Defendants' behalf distribute the copyrighted work. Plaintiffs' intent may be inferred from the work's nature or the circumstances surrounding the work's creation.

If you find that Defendant has proved these elements by a preponderance of the evidence, your verdict must be for Defendant on the claim of copyright infringement if Defendants' use doesn't exceed the scope of their license. Defendants can still commit copyright infringement if they exceeded the scope of the license.

**Factual Allegations**:

Plaintiffs do not print their books.  Instead, they license third-parties to print and/or distribute their books.  Sometimes, the third-parties print and/or distribute more books than Plaintiffs are aware that they printed and/or distributed.  Because the third-parties were expressly licensed to print and/or distribute these books, any subsequent sale of these books by Defendants is subject to an implied license and does not constitute infringement.

**<u>Legal Sources</u>**:  Court of Appeals for the Eleventh Circuit Pattern Jury Instructions § 9.27 [2013]; 17 U.S.C. § 109.

## FORTY-THIRD DEFENSE
## (Collateral Estoppel / Res Judicata)

Defendants do not seek an instruction to the jury concerning the affirmative defenses of res judicata or collateral estoppel.

## FORTY-FOURTH DEFENSE
### (Release)

Defendants do not seek an instruction to the jury concerning the affirmative defense of release.

## **FORTY-FIFTH DEFENSE**
### **(Waiver)**

Defendants do not seek an instruction to the jury concerning the affirmative defense of waiver.

## FORTY-SIXTH DEFENSE
### (Failure to Mitigate)

Defendants do not seek an instruction to the jury that Plaintiffs' failure to mitigate

damages constitutes an affirmative defense.

## FORTY-SEVENTH DEFENSE
### (Culpable Conduct)

Defendants do not seek an instruction to the jury that Plaintiffs' culpable conduct constitutes an affirmative defense.

## **FORTY-EIGHTH DEFENSE**
### ***(In Pari Delicto*)**

Defendants do not seek an instruction to the jury concerning the doctrine of *in pari delicto*.

## **FORTY-NINTH DEFENSE**
### **(Set-Off)**

Defendants do not seek an instruction to the jury concerning the doctrine of set off.

### FIFTIETH DEFENSE
### (Duplicative Claims / Damages)

Defendants do not seek an instruction to the jury that Plaintiffs' claims are barred on the grounds of duplication.  Defendants reserve the right to challenge any proposed instruction by Plaintiffs that would risk improper duplication of damage awards.  Defendants further reserve their right to present a motion at trial seeking a ruling that Plaintiffs' claims are duplicative and/or preempted.

## **FIFTY-FIRST DEFENSE**
### **(Election of Remedies)**

Defendants do not seek a jury instruction on the election of remedies doctrine.  However,

Defendants note that Plaintiffs have already elected statutory damages over actual damages.

## FIFTY-SECOND DEFENSE
## (Bankruptcy Discharge)

**Proposed Instruction**:

Defendants claim that Plaintiff Cengage Learning's claims are barred by its 2013 bankruptcy and subsequent reorganization.  In connection with bankruptcy, a bankrupt corporation may submit a plan for reorganization to the court, setting forth its assets and liabilities, including potential legal claims.  Where a court approves a plan of reorganization for a bankrupt company, that plan eliminates legal claims that were not identified by the company on its plan.

If you find that Cengage Learning submitted a plan for reorganization and that plan was accepted by a bankruptcy court, you must determine whether its claims in this action were disclosed on that plan.  If those claims were not disclosed, you must find for Defendants on all undisclosed claims.

**Factual Allegations**:

Cengage Learning entered bankruptcy protection in 2013 and in 2014 its proposed Plan of Reorganization was approved.  That Plan of Reorganization identified certain legal claims as assets, but not the claims that are at issue in this action.  Since those claims were not explicitly identified, they do not survive the court's approval of the 2014 Plan of Reorganization and are properly dismissed on *res judicata* grounds.

**Legal Sources**:  *In re Am. Preferred Prescription, Inc.*, 266 B.R. 273, 277 (E.D.N.Y. 2000) ("a confirmed plan has preclusive effect under res judicata, even against parties who opposed it…[t]he case law, however, recognizes an exception to the res judicata bar where the debtor has reserved the right to object to claims in a plan..[but] [t]he majority of courts that have examined this issue have held that for this exception to apply, the plan must expressly reserve the right to pursue that particular claim post-confirmation and that a blanket reservation allowing for an objection to any claim is insufficient.") (collecting cases); *D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York*, Case No. 95 C 4974, 1996 WL 224517, at *4 (N.D. Ill. 1996) ("[A] blanket reservation of rights is insufficient to overcome the res judicata bar to the institution of a

post-confirmation lawsuit imposed by a confirmed bankruptcy plan."), *aff'd*, 112 F.3d 257, 261 (7th Cir.1997) ("To avoid res judicata the reservation of a cause of action must be both express, as in writing, and express, as in specifically identified.").

DATED:      New York, New York
            August 29, 2017

                          MANDEL BHANDARI LLP

                  By:   /s/ Evan Mandel_____
                        Evan Mandel
                        80 Pine Street, 33rd Floor
                        New York, New York 10005
                        Office: (212) 269-5600
                        Fax:    (646) 969-6667

                        *Attorneys for Defendants Book Dog Books, LLC,
                        Apex Media, LLC, and Robert William
                        Management, LLC*