**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, and PEARSON EDUCATION, INC., | Case No. 1:16-cv-7123 (WHP)(GWG) |
| Plaintiffs, | |
| v. | |
| BOOK DOG BOOKS, LLC d/b/a TEXTBOOKRUSH and TEXTBOOKSRUS, APEX MEDIA, LLC, AND ROBERT WILLIAM MANAGEMENT, LLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN**
**ADVERSE INFERENCE INSTRUCTION**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS...................................................................................... 3

    **I.  Defendants' refusal to produce financial information began in *BDB I*. ..................... 3**

    **II.  In BDB II, Defendants have refused to comply with four court orders requiring them to produce financial information. ...................................................................... 3**

       1.  Plaintiffs' First Motion to Compel.................................................................. 3

       2.  Plaintiffs' Second Motion to Compel ............................................................ 4

       3.  Plaintiffs' Third Motion to Compel .............................................................. 5

       4.  Plaintiffs' Fourth Motion to Compel ............................................................ 6

    **III.  Defendants' productions of financial information are still deficient. .......................... 7**

       1.  Defendants have not produced any records at all for nine of 24 entities on PX 604...... 7

       2.  The only documents Defendants have produced showing distributions to Philip Smyres are K-1s, which Defendants now contend do not show actual distributions. ......................... 8

       3.  Defendants have produced no distribution information for some entities and inadequate distribution information for others...................................................... 11

       4.  Defendants produced documents showing that certain Smyres-owned entities have income, but have not produced documents showing how that income is distributed.......... 13

       5.  Defendants' document collection procedures in response to the Court's Oct. 5 Order were inadequate. ...................................................................... 15

       6.  Defendants have not produced documents showing distributions to Mr. Smyres' son. 16

       7.  The distributions shown in Defendants' audited financial statements do not match the distributions shown in the tax documents Defendants produced......................... 16

ARGUMENT........................................................................................................ 17

    **I.  Defendants' refusal to comply with court orders has prejudiced Plaintiffs' ability to present its case at trial and justifies relief. ........................................................ 17**

    **II.  Defendants' counsel has a reported history of failing to comply with court orders to produce financial information. ............................................................. 20**

    **III.  Plaintiffs' requested relief is narrowly tailored to address the prejudice Defendants have caused............................................................................... 21**

## INTRODUCTION

This motion arises from Defendants' sustained discovery misconduct that will materially prejudice Plaintiffs in a jury trial set to begin December 4.  On an issue central to the upcoming trial, Defendants have played by their own set of rules, repeatedly disregarding their discovery obligations and refusing to comply with multiple orders from this Court.  This Court repeatedly and unequivocally ordered Defendants to produce financial information that bears directly on the statutory damages appropriate for willful infringers like Defendants.  On *four* different occasions, Plaintiffs sought the Court's assistance in obtaining financial documents from Defendants.  On *four* different occasions, this Court ordered Defendants to produce the requested documents.  Despite those repeated orders and Defendants' strategy of providing a slow drip of inadequate responses, Defendants still have not provided the basic, fundamental documents sufficient to show Defendants' financial profits.

Defendants' violations go far beyond mere oversight or reasonable dispute, and the motivation is clear: Defendants want to hide from a jury the extent and location of the profits they have reaped from their infringing businesses.  Defendants' conduct mirrors exactly that of Defendants in the recent *Scantibodies* case in which Defendants and their counsel—Mandel Bhandari, LLP, the same defense counsel in this case—were admonished and sanctioned for willfully withholding relevant financial information bearing on damages, misrepresenting information to the Court, and refusing to comply with numerous court orders compelling productions.  *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-cv-2275 (JGK)(DF), 2016 U.S. Dist. LEXIS 154396, at *61 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted by* 2017 U.S. Dist. LEXIS 21223 (S.D.N.Y. Feb. 14, 2017).  Defendants, especially through their counsel, are on notice that such abuses have consequences and that innocent opposing parties

must not be prejudiced thereby.

Absent clear information on the Defendants' revenues, profits and profit distributions, a jury cannot effectively assign an appropriate statutory damages award that will satisfy Congress's intended principles of punishment and deterrence under the Copyright Act. Nor should Plaintiffs suffer prejudice from Defendants' misdeeds by having to present an incomplete financial picture to the jury. Such a result would ratify Defendants' misconduct without consequence. And with trial set to begin on December 4, there is simply no time left for Defendants to cure. The parties' joint pre-trial order is due November 3 and motions *in limine* have already been filed. New financial discovery at this late date would still prejudice Plaintiffs by requiring analysis of additional complex documents, another deposition with Defendants' financial officer, and likely a revised expert report and depositions.

The time has come to hold Defendants accountable, cure the prejudice caused by Defendants' discovery abuses, and instruct the jury accordingly. Plaintiffs thus request that the jury be informed that Defendants have violated numerous court orders by repeatedly refusing to produce documents sufficient to show the revenues, profits and profit distributions from Defendants' book businesses, and that the amount of profits presented by Plaintiffs at trial may represent only a portion of Defendants' total earnings. Plaintiffs further request that the jury be instructed that the jury may infer from Defendants' violations that, had Defendants produced additional information on their profits, the additional information likely would have shown higher profits than what Plaintiffs have shown and would be unfavorable to Defendants in this case. The requested relief is narrowly tailored to cure the prejudice Defendants' misconduct will cause to Plaintiffs and is the least severe sanction possible at this late date.

## STATEMENT OF FACTS

**I.      Defendants' refusal to produce financial information began in *BDB I*.**

Defendants' willful refusal to produce financial information dates back to *BDB I*.  In

*BDB I,* the plaintiffs were forced to file four motions to compel the defendants to produce the

relevant financial records.  All of these motions were granted.  *BDB I* ECF No. 37 (attached as

Exhibit A); *BDB I* ECF No. 40 (attached as Exhibit B); *BDB I* January 9, 2014 Hearing Tr. at 20-

27 (excerpts attached as Exhibit C); *BDB I* February 13, 2014 Hearing Tr. at 19:12-25:25

(excerpts attached as Exhibit D).  Finally, after four court orders, the *BDB I* defendants produced

voluminous financial records at the individual transaction level, including bank statements and

cancelled checks, that allowed the plaintiffs to determine the defendants' profits.  The parties

then agreed to a stipulation regarding those profits, but the defendants tried to renege on that

stipulation and only delivered an executed copy after the plaintiffs were twice forced to seek the

Court's intervention.  *BDB I* ECF Nos 152, 163.

**II.     In BDB II, Defendants have refused to comply with four court orders requiring
         them to produce financial information.**

In *BDB II*, Plaintiffs diligently pursued Defendants' financial records since the beginning

of discovery, leading to a long and well-documented history marked by Defendants' attempts to

evade its obligations to produce financial documents.

**1.  Plaintiffs' First Motion to Compel**

Plaintiffs initially requested production of financial information in their very first

document requests served on March 3, 2017.  On Plaintiffs' most basic request for documents

sufficient to show "Defendants' revenues, profits, losses, and distributions," Defendants

categorically objected and said they "will not produce documents responsive only to this

request."  *See* Defendants' Responses and Objections to Plaintiffs' First Requests for Production

3

of Documents, Request No. 19; see also Request Nos. 14, 18 (attached as Exhibit E).   On May

4, 2017, in resolving Plaintiffs' first motion to compel financial documents in *BDB II*, the Court

overruled Defendants' objections and ordered that Defendants "[m]ust produce whatever was

ordered last time unless you two reach some other agreement."  May 4, 2017 Hearing Tr. at 81

(excerpts attached as Exhibit F).  In *Book Dog I*, Judge Pauley ordered Defendants to produce:

- [P]rofit and loss information from 2008 to the present for the [relevant] titles, individually and collectively;
- All profit and loss statements for Defendant Book Dog Books from 2008 to the present, including any such documents reviewed by outside accountants or auditors;
- <u>All documents</u> relating to payments, distributions, dividends, or other funds transferred to Defendant Philip Smyers from Book Dog Books, Buckeye Bookstore, UBX Exchange, TextbooksRUs, and TExtbookrush.com from 2008 to the present.

*Book Dog I*, November 16, 2013 Order Compelling Production (ECF No. 40) (emphasis

in original) (attached as Exhibit B).  Notably, Judge Pauley's order was not limited to just the

defendant entity, but required production of financial information for related entities as well.

**2.  Plaintiffs' Second Motion to Compel**

Defendants refused to comply with the Court's May 4 Order, and instead produced

quarterly summaries for Book Dog Books and Robert William Management created for this

litigation, but no documents reviewed by outside accountants and no documents on profit

distributions.  When Plaintiffs objected, Defendants produced highly redacted audited financial

statements that were essentially useless given the level of redactions.  The redactions both

contravened the May 4 order requiring compliance with Judge Pauley's order in *BDB I* and

rendered the documents wholly inadequate.

When Plaintiffs next moved to compel, they sought 1) unredacted copies of the audited

financial statements and 2) information on distributions.  (ECF No. 80).  Overruling Defendants'

4

objections, the Court determined that information regarding related entities and distributions to

Philip Smyres are relevant, and ordered Defendants to produce unredacted financial statements.

August 3, 2017 Hearing Tr. at 103-06 (excerpts attached as Exhibit G).  Despite this clear order,

Defendants still refused to produce any further information for related entities or documents

showing distributions to Philip Smyres.

### 3.  Plaintiffs' Third Motion to Compel

Plaintiffs used the newly produced unredacted financials statements to examine

Defendants' designated corporate representative on August 31, 2017.  These new documents and

testimony revealed that Defendants have two previously undisclosed outside investors, Garrison

Commercial Funding X, LLC ("Garrison") and Stonehenge Capital ("Stonehenge"), whom

Defendants have paid millions of dollars in profit distributions over the last several years, and

that Defendants' financial statements misleadingly characterize these profit distributions as

operating expenses.  Deposition testimony also revealed for the first time that Defendants

prepare monthly financial reporting packages for Garrison.  Sheryl Cox August 31, 2017

Deposition Transcript at 69:10-21 (hereafter "Cox I Tr.") (excerpts attached as Exhibit H).

Defendants refused to produce these reporting packages, and still refused to produce any

information on distributions or related entities beyond the unredacted financial statements.

Plaintiffs thus moved to compel financial documents for a third time—this time seeking

production of the Garrison reporting packages and distribution information.  (ECF No. 111).  In

granting the motion, the Court ordered:

> The financials of these companies absolutely have to be produced in as accessible
> and clear a form as possible and that includes what money is going where and
> how. . . .  Any disclosure at all as to these entities and how the money moves
> around and who gets it is absolutely relevant here so that we can understand how
> much money is being made and that it isn't being hidden in some fashion.  So
> there should be maximum disclosure on the financials.

September 9, 2017 Hearing Tr. at 90-91 (excerpts attached as Exhibit I).

### 4. Plaintiffs' Fourth Motion to Compel

In response to this third order, Defendants produced monthly reporting packages dating to dating back to December 2015, representing that none existed for earlier periods. But Defendants *still* refused to produce any additional information on distributions or related entities beyond those already listed in the unredacted financial statements.

Plaintiffs once again had to request relief from the Court to cure Defendants' continued refusal to comply with prior orders. In response to Plaintiffs' fourth motion to compel, the Court, on October 5, 2017, ordered Defendants to produce:

1. All distributions or other payments from 2013-present by any of the entities identified on Plaintiffs' Deposition Exhibit 604 ("PX 604") to Philip Smyres, Philip Smyres' son N.S., Diana Smyres, Gayle Elizabeth Kuhr, Garrison, Stonehenge, and any other individuals and/or entities that received distributions (or payment from profits regardless of what name was used to describe or book those payments).

2. All profits retained and/or reinvested from 2013-present by any of the Smyres'-related textbook businesses identified on Plaintiffs' Deposition Exhibit 604.

3. All K-1s for Philip Smyres from 2013-present showing payments from any of the Smyres'-related textbook businesses identified on Plaintiffs' Deposition Exhibit 604.

ECF No. 127 (ordering Defendants to produce the materials listed in ECF No. 126 in their possession) (ECF No. 126 attached as Exhibit J).

On October 11, 2017, in response to the Court's fourth order compelling Defendants to produce financials, Defendants produced additional materials, including K-1s for three entities, unaudited financial information for several others, and financial reporting packages for Garrison dating from January 2013 – September 2015 that Defendants previously represented did not exist. *See* Sept. 20, 2017 email from Leah Vickers (attached as Exhibit K).

**III.    Defendants' productions of financial information are still deficient.**

Using these newly produced materials, Plaintiffs continued the deposition of Defendants' designated corporate representative on financials on October 19.  Testimony at this deposition made clear that Defendants' productions are still an incomplete patchwork that fall far short of the "maximum disclosure on the financials" the Court ordered, or even sufficient to understand the basic revenues and profits of Defendants' interrelated textbook enterprise.  Specifically, Defendants' production is still deficient in the following ways:

**1.    Defendants have not produced any records at all for nine of 24 entities on PX 604.**

At Philip Smyres' deposition, Mr. Smyres was shown a list of 24 companies, titled "Phil Smyres' Textbook-Related Business as of December 31, 2016," that was marked as Plaintiffs' Exhibit 604 (hereinafter "PX 604") (attached as Exhibit L).  Mr. Smyres testified that he owns "over 99 percent" of all of the entities listed on PX 604, and that he is "ultimately responsible" for all of the entities listed on PX 604.  Philip Smyres September 26, 2017 Deposition Transcript 18:18-20, 95:13-17 (hereafter "Smyres Tr.) (excerpts attached as Exhibit M).  On October 5, the Court ordered Defendants to produce financials, including profits, for all entities listed on PX 604.

Defendants have produced no financial records at all for these nine entities listed on PX 604, which Mr. Smyres ultimately owns and which are interrelated with Defendants' textbook enterprise: (1) Apex Commerce, LLC; (2) Apex Media, LLC; (3) Bookeagle.com, LLC; (4) Books for Coco, LLC; (5) Bookstores.com, LLC; (6) Mandolin Imports, LLC; (7) Robert William Intermediate Holdings Doppleganger, LLC; (8) Robert William Intermediate Holdings, LLC; and (9) SrockPaper Imports, Inc.

These deficiencies make it impossible for Plaintiffs to determine the profits Defendants'
textbook enterprise has generated or how much money Mr. Smyres and his family have received
from their ownership of the Defendants. *See* Expert Report of Harry Steinmetz, at 16 (attached
as Exhibit N).

### 2. The only documents Defendants have produced showing distributions to Philip Smyres are K-1s, which Defendants now contend do not show actual distributions.

Defendants have refused to produce Court-ordered documents showing actual
distributions, but nevertheless have attempted to use that undisclosed information to rebut
income information shown in the K-1s they have produced. This is a classic sword-and-shield
maneuver that the Court should not countenance.

Defendants certainly have not produced documents showing the profits of all 24 of his
companies and Mr. Smyres could not testify to the profits of any of his companies. For three
entities, Mr. Smyres testified that the entities were profitable from 2012-16 but that he did not
know the amounts of the profits. Regarding K12 Book Services, Inc., Mr. Smyres testified, "Q.
Do you know whether K12 Book Services, Inc., generated a profit in the years 2012 to 2016? A.
Yes, I believe it did. Q. And do you know what the amount of that profit was? A. I do not."
Smyres Tr. 49:21-50:2. Mr. Smyres gave virtually identical testimony regarding RWH, and
Robert William Management, LLC. Smyres Tr. 72:16-21, 81:15-21.

For the other 21 entities listed on PX 604, Mr. Smyres did not know whether those
entities had generated a profit in any of the years from 2012-16. For example, Mr. Smyres
testified, "Q. Do you know whether Apex Media, LLC, generated any profit between the years
2012 and 2016? A. I don't know." Smyres Tr. 42:19-21. Mr. Smyres gave a virtually identical
answer when asked the same question for each of the other entities on PX 604. Smyres Tr. 35:8-

12, 36:23-37:1, 38:3-6, 39:18-21, 41:6-8, 42:19-21, 43:14-17, 45:1-4, 45:8-10, 45:14-16, 45:22-46:4, 47:2-4, 48:14-17, 52:5-7, 68:4-6, 73:19-74:1, 82:15-20, 84:1-4, 90:6-9.

A K-1 is a schedule that a partnership (including an LLC being taxed as a partnership) files with the IRS to report each partner's share of the partnership's income, deduction, and credits, among other things.  Of the 24 companies listed on PX 604, Defendants produced K-1s for only three of the companies.  The K-1s produced show the taxable income Mr. Smyres received from Defendants and their related entities.  But Defendants' corporate representative argued in her deposition the taxable income the K-1s show is not the same as the actual income Mr. Smyres received:



Sheryl Cox October 18, 2017 Deposition Transcript 271:19-272:14, 273:9-20 (hereafter "Cox II Tr.") (excerpts attached as Exhibit O).   On re-direct, Defendants' corporate representative repeated this position:



Cox II Tr. 397:2-398:7).   Defendants were ordered to produce documents showing "[a]ll distributions or other payments from 2013-present by any of the entities identified on [PX] 604." ECF No. 127 (ordering Defendants to produce the materials listed in ECF No. 126 in their possession) (ECF No. 126 attached as Exhibit J).   The only documents Defendants produced on this point were the K-1s that Defendants now contend do not show actual payments.   While Defendants want to refute what is in the K-1s by pointing to actual payments, they have not produced any other records of those actual payments. In *BDB I*, when faced with a similar order to produce records of payments of distributions, the defendants were forced to produce voluminous transaction-level data, down to the last cancelled check.   Despite facing a nearly

identical order to produce payment and distribution information, and having been initially ordered to produce "whatever was ordered last time," Defendants in *BDB II* have refused to produce records of actual payments.

### 3. Defendants have produced no distribution information for some entities and inadequate distribution information for others.

Defendants produced audited financial statements for six of the 24 companies on PX 604. Those statements provide high-level distribution information, but not enough from which to determine what entities paid distributions when and to whom, and nothing for 18 of the interrelated entities.



Cox Tr. 400:20-401:9. Failure to produce these underlying materials patently contravenes the Court's clear order to make "maximum disclosure on the financials" to show "how the money moves around and who gets it." Sept. 9, 2017 Hearing Tr. at 90-91 (excerpts attached as Exhibit I). Defendants have this more detailed information in their books and records that they have not produced.

Additionally, while the K-1s provide limited summary information on distributions for the three top-level entities for which K-1s were produced, Defendants' books and records contain more detailed information on distributions that show "how the money moves around and who gets it," but Defendants have not produced these records:



Cox II Tr. 409:12-410:22.  Finally, to the extent Defendants' audited financial statements and K-1s describe distributions to Mr. Smyres, they do not include all of the entities listed on PX 604:



Cox II Tr. 403:24-404:7, 405:2-7.  Defendants were ordered to produce distribution information for every entity on PX 604.  For the ten entities listed on PX 604 that are not included in the audited financial statements and that are not subsidiaries of GEKR Holdings, LLC, SPL

Management LLC, and Book Dog Books, LLC (FL), Defendants have produced no information at all on distributions.

**4. Defendants produced documents showing that certain Smyres-owned entities have income, but have not produced documents showing how that income is distributed.**

Defendants produced unaudited internal financial information for Anaid Holdings, LLC. Anaid Holdings, LLC is wholly owned by Mr. Smyres and is listed on PX 604, and the income statements produced show the entity earned a profit. But Defendants produced no documents describing what happened to these profits:



Cox II Tr. 381:12-383:14.  If Anaid Holdings LLC is a disregarded entity for tax purposes, then its income would have been paid directly to Mr. Smyres.[1]  Defendants produced no records of such payments despite a clear order to do so.

---

[1] A disregarded entity is a business entity with one owner that is not recognized for tax purposes as an entity separate from its owner.  An example of a disregarded entity is an LLC with only one owner.  A disregarded entity does not file a separate tax return or issue schedule K-1s.  Instead, the sole owner reports the income from the disregarded entity as their own income on their personal tax return.  For tax purposes, payments to the disregarded entity are treated as payments to the owner.  *See* Andrew Presti, *FAQ: What Is a Disregarded Entity*, Presti &

Defendants also produced unaudited internal financial information for two real-estate holding companies listed on PX 604 that are wholly owned by Mr. Smyres—1401 West Goodale LLC and 999 Kinnear Road LLC.

---

Naegele Accounting Offices Blog, http://www.pntax.com/faq-what-is-a-disregarded-entity/ (last visited Oct. 30, 2017).



income would have been paid directly to Mr. Smyres by Defendant Book Dog Books. Defendants have not produced any records of such payments.

Anaid Holdings, LLC, 1401 West Goodale LLC, and 999 Kinnear Road LLC generated profits for Mr. Smyres, and were subject to the Court's order to produce distribution information, but Defendants produced no such information.

**5. Defendants' document collection procedures in response to the Court's Oct. 5 Order were inadequate.**

When Defendants contacted their accountants to collect documents in response to the Court's October 5 order to produce financial documents on all entities in PX 604 (ECF No. 127), Defendants did not provide their accountants with the list of entities contained in PX 604, and Defendants' corporate representative could not recall for which entities Defendants requested documents from their accountant.:



15



Cox II Tr. 383:15-384:16.   Given Defendants' discovery record on financials and continued failure to produced ordered documents, these actions are not sufficient and certainly do not satisfy Defendants' obligation to conduct a reasonable search.

**6.   Defendants have not produced documents showing distributions to Mr. Smyres' son**

Mr. Smyres testified that his son received distributions:

> Q. Have -- have any distributions been paid out to your son [N.S.] over the course of the last five years from any of the companies listed on Plaintiff's Exhibit 604?
> A. Yes.
> Q. And do you know the amounts of those distributions?
> A. I don't know.
> . . .
> Q. And distributions to your son [N.S.], are they paid to him individually?
> A. That or the IRS, yeah.

Smyres Tr. 19:22-20:5, 120:18-20.   Defendants' corporate representative testified that she did

only taxable income and do not describe actual payments.   Defendants have not produced any documents showing actual payments of distributions to Mr. Smyres' son.

**7.   The distributions shown in Defendants' audited financial statements do not match the distributions shown in the tax documents Defendants produced.**

The audited financial statements Defendants produced indicate that Robert William

16



## ARGUMENT

**I.     Defendants' refusal to comply with court orders has prejudiced Plaintiffs' ability to present its case at trial and justifies relief.**

Defendants' repeated and consistent obfuscation demands the Court take action.  When a party fails to comply with discovery orders, Rule 37 of the Federal Rules of Civil Procedure empowers the court to "issue further just orders."  Fed. R. Civ. P. Rule 37(b)(2)(A).  An evasive or incomplete response should be treated as a failure to respond. Fed. R. Civ. P. Rule 37(a)(4).  A

17

district court has "wide discretion" under Rule 37 to craft remedies to address discovery misconduct. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d. Cir. 2006).

Courts consider several factors in issuing just orders under Rule 37, including "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of his non-compliance." *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). Such orders have several purposes: "to ensure that a party will not benefit from its failure to comply with a court order, (2) to obtain the party's compliance, and (3) to serve as a deterrent." *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-cv-2275 (JGK)(DF), 2016 U.S. Dist. LEXIS 154396, at *61 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted by* 2017 U.S. Dist. LEXIS 21223 (S.D.N.Y. Feb. 14, 2017).

Where a party has failed to produce evidence, a court may grant an adverse inference instruction under Rule 37 upon a showing "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the claim or defense of the other party such that a reasonable trier of fact could find that it would support that claim or defense." *DeCastro v. Kavadia*, 309 F.R.D. 167, 181 (S.D.N.Y. 2015) (citations and internal quotations omitted). Sanctions like an adverse inference instruction are appropriate "[w]hen a party seeks to frustrate [the discovery process'] design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits . . . ." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

18

Defendants' conduct warrants an adverse inference instruction on the issue of Defendants' profits. Defendants' conduct is willful, and has extended over several months. "Frustrating" the discovery process "by disobeying court orders, thereby preventing disclosure of essential facts" perfectly describes Defendants' conduct. Defendants have been previously ordered *four times* to produce the clearly relevant information at issue and have still refused to comply. *See Funnekotter v. Agric. Dev. Bank of Zimb.*, No. 13 Civ. 1917 (CM), 2015 U.S. Dist. LEXIS 73221, at *14-*16 (S.D.N.Y. 2015) (ordering adverse inference instruction after party repeatedly defied court orders to produce documents); *DeCastro*, 309 F.R.D. at 184 (same); *see also Daval Steel Prods.*, 951 F.2d at 1365 (sanction appropriate where "repeated failure to produce demanded documents subject to an explicit court order . . . evince[d] a willful frustration of plaintiffs-appellees' efforts to discover the true facts."); *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 270-71 (S.D.N.Y. 2011) (precluding defendant from deducting amounts from damages where defendant failed to comply with order requiring production of documents supporting deduction); *Thompson, M. D. v. Jamaica Hosp. Med. Ctr.*, No. 13 Civ. 1896, 2015 U.S. Dist. LEXIS 157304, at *6-*7 (S.D.N.Y. Nov. 20, 2015) (willfulness justifying sanction shown "where multiple Orders have been issued on the same subject, over a period of more than a year"); *Richmond v. Gen. Nutrition Centers Inc.*, No. 08 Civ. 3577 (PAE) (HBP), 2012 U.S. Dist. LEXIS 32070, at *15-*20 (S.D.N.Y. Mar. 9, 2012) (sanctioning party for refusing to produce evidence and citing cases where non-production justified sanction); *Ellis v. Asset Prot. & Sec. Servs., LP*, No. 09 Civ. 6555 (RJH), 2011 U.S. Dist. LEXIS 109598, at *5-*7 (S.D.N.Y. Sept. 27, 2011) (sanctioning plaintiff for refusing to comply with court orders requiring production of evidence on damages).

II.     **Defendants' counsel has a reported history of failing to comply with court orders to produce financial information.**

Defendants' counsel is well aware of the need to produce financial information when ordered to do so by a court. In the November 2016 *Scantibodies* case cited above, Magistrate Judge Freeman found that Defendants' counsel, Mandel Bhandari LLP, refused to comply with multiple court orders requiring its client to produce financial information relevant to the damages claim at issue. *Scantibodies*, 2016 U.S. Dist. LEXIS 154396, at *93. Magistrate Judge Freeman concluded that Mandel Bhandari LLP had "engaged in significant obstruction and delay of the discovery process—making misrepresentations to the Court regarding the existence and relevance of documents at issue, and repeatedly frustrating Defendant's ability to discover the basis for Plaintiff's damages claims and obtain evidence necessary to refute those claims." *Id.* at *2-*3.

The misconduct at issue here is eerily similar to the misconduct conduct in *Scantibodies*. Here, Defendants misrepresented to the Court the relevance and need for documents at issue. Defendants represented that their net profits could be determined by looking solely at *redacted* financial statements of RWH, (ECF No. 84) (attached as Exhibit P), but these redactions hid both intercompany transactions between related entities and Defendants' substantial profit-sharing arrangement with outside investors. Defendants' corporate representative subsequently made clear that only by looking at the eliminations reported on RWH's *unredacted* financial statements could the value of transactions between Book Dog Books, LLC and Robert William Management LLC be discerned. Cox I Tr. 195:7-197:15.

Defendants have also repeatedly misleadingly represented that all Defendants' distributions go to Mr. Smyres, *see, e.g.*, ECF No. 121 at 3 (attached as Exhibit Q), which is inaccurate. And, of course, they have repeatedly frustrated Plaintiffs' ability to discover core

facts and financial information bearing directly on their damages case.  That Judge Freeman sanctioned Mandel Bhandari LLP for virtually identical conduct in a different case, and so near in time, is highly relevant.  Plaintiffs do not cite to this caselaw to tarnish the reputations of Defendants' counsel, but rather to demonstrate that Defendants, through counsel, are on notice that they must not engage in delay and obfuscation during the discovery process, and that if they do so there can be severe consequences.  Given the history of the *Scanitbodies* case, Defendants' failure to provide financial documents in this case cannot be seen as an innocent discovery oversight.

### III.   Plaintiffs' requested relief is narrowly tailored to address the prejudice Defendants have caused.

Defendants' failure to produce court-ordered financial documents has prejudiced and will continue to severely prejudice Plaintiffs at the upcoming trial.  Absent a clear picture of Defendants' profits, a jury cannot adequately assign a statutory damage award to achieve Congress's goals of deterrence and punishment for willful infringement.  Presenting the incomplete record available today to the jury without an adverse inference instruction would reward Defendants' misconduct at Plaintiffs' expense.  A lesser remedy than the adverse inference instruction Plaintiffs seek cannot fully address this prejudice.  While Defendants' conduct could justify more severe sanctions, the order Plaintiffs seek is narrowly tailored to address the specific deficiencies in Defendants' compliance.

In the prior instances where Plaintiffs have sought the Court's assistance with this issue, the Court has repeatedly ordered Defendants to provide the requested information, without any sanction.  That remedy will no longer work.  Giving Defendants a fifth bite at the apple to attempt to remedy their deficiencies will only prejudice Plaintiffs further.  On that point, this case differs from *Scanitbodies*. In *Scanitbodies*, no summary judgment motions had been filed

and no trial date had been set, making further discovery an appropriate remedy. *Scantibodies*,
2016 U.S. Dist. LEXIS 154396, at *120. Here, discovery has closed, there is no summary
judgment process, and trial is set to begin in 35 days. Time does not remain for another round of
document productions, depositions, and subsequent motions practice following the inevitable
additional deficiencies in Defendants' production. Having to review new, complicated financial
documents, conduct further depositions, and serve a revised expert report at this point in the case
would severely prejudice Plaintiffs' ability to properly prepare for the imminent trial.

Defendants have refused to produce complete records for numerous entities that generate
income from Mr. Smyres' textbook businesses. These records are crucial because Defendants'
profits cannot be definitively determined without considering the profits from all of Mr. Smyres'
book-related business. *See* Expert Report of Harry Steinmetz, at 6 (attached as Exhibit N). Had
these records been produced, they would likely show that the profits Mr. Smyres' book-related
businesses generate is larger than appears from the documents Defendants did produce.
Therefore, the jury should be informed that Defendants have violated numerous court orders by
repeatedly refusing to produce documents sufficient to show the revenues, profits and profit
distributions from Defendants' book businesses, and that the amount of profits presented by the
Plaintiffs at trial may represent only a portion of Defendants' total earnings. The jury should also
be instructed that the jury may infer from Defendants violations that, had Defendants produced
additional information on their profits, the additional information likely would have shown
higher profits than what Plaintiffs have shown and be unfavorable to Defendants in this case.
Such an instruction is narrowly tailored to address the prejudice Defendants have caused, and
that prejudice cannot be ameliorated by a lesser remedy.

Plaintiffs also respectfully request an order granting them all costs and attorneys' fees associated with their four motions to compel described herein and the instant motion.


Dated: October 30, 2017

By:   /s/Matthew J. Oppenheim
Matthew J. Oppenheim
Scott A. Zebrak
Julie C. Chen
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel: 202.480.2999
Fax: 866.766.1678

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 30, 2017, a copy of the foregoing was served on all counsel via ECF.

_____/s/ Jeffrey M. Gould_____