

Justin A. MacLean
Tel 212.801.3137
Fax 212.309.9537
macleanj@gtlaw.com

November 8, 2017

**MEMO ENDORSED**

The Honorable William H. Pauley, III
United States District Judge
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

   Re: *Cengage Learning, Inc. et al v. Book Dog Books, LLC et al*
     Case No.:1:16-cv-07123-WHP-GWG

Dear Judge Pauley:

  We write on behalf of third-party, Chegg, Inc. ("Chegg"), which specially appears in this matter to challenge the public filing by defendants of portions of their Motion in Limine [Dkt. 159] ("Proposed MIL") that expressly reference data from documents and testimony Chegg designated as HIGHLY CONFIDENTIAL pursuant to the Protective Order in *John Wiley & Sons, Inc., et al. v. Book Dog Books, LLC, et al.*, No. 13-cv-00816 (WHP)(GWG) ("*Book Dog I*"), that was extended to this case ("*Book Dog II*"). Dkt. No. 32. Pursuant to this Court's Individual Practices, Section V.A, Chegg respectfully requests that Chegg's motion to seal portions of the Proposed MIL ("Motion," attached hereto as Exhibit 1) be filed under seal, as it discloses the specific HIGHLY CONFIDENTIAL material that Chegg seeks to keep under seal.

  One of the documents from which defendants derive data included in the Proposed MIL is a spreadsheet that lists all of the Chegg and Ingram[1] books that the higher education publishers inspected in 2016. In questioning Chegg's witness regarding this document, defendants identified the percentage of counterfeit books both within Chegg/Ingram's inventory that was audited by the publishers and from the various sources from which Chegg/Ingram obtain books, including defendants. Defendants have included some of this information and corresponding testimony, gleaned from the HIGHLY CONFIDENTIAL document in their Proposed MIL. *See* Proposed MIL at 1-2. This same information is disclosed in Chegg's motion to seal. (*See* Motion at 1, 6-7, and Exh. B thereto.)

  The other HIGHLY CONFIDENTIAL document and testimony defendants reference reflects sources from which Chegg obtains books, the number of books it purchases from each of those sources, and the extent to which those books were reviewed

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN¬
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL∼
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO¤
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

¬ OPERATES AS
  GREENBERG TRAURIG GERMANY, LLP
\* OPERATES AS A
  SEPARATE UK REGISTERED LEGAL ENTITY
+ OPERATES AS
  GREENBERG TRAURIG, S.C.
\*\* STRATEGIC ALLIANCE
∼ OPERATES AS
  GREENBERG TRAURIG LLP
  FOREIGN LEGAL CONSULTANT OFFICE
^ A BRANCH OF
  GREENBERG TRAURIG, P.A.,
  FLORIDA, USA
¤ OPERATES AS
  GT TOKYO HORITSU JIMUSHO
~ OPERATES AS
  GREENBERG TRAURIG GRZESIAK SP.K.

---

[1] Ingram is Chegg's distribution partner.

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
MetLife Building, 200 Park Avenue ■ New York, New York 10166 ■ Tel 212.801.9200 ■ Fax 212.801.6400

*LA 133319067v2*

The Honorable William H. Pauley, III
United States District Judge
November 8, 2017
Page 2

and/or suspected as counterfeit (both as a number and percentage). (*See* Motion at 1-2, 6-7, and Exh. C thereto.) [2]

Paragraph 2(g) of the Protective Order provides that "Highly Confidential" materials are those that constitute "current or future business or technical trade secrets and plans more sensitive or strategic than Confidential information, the disclosure of which is likely to significantly harm that Person's competitive position, or the disclosure of which would contravene an obligation of confidentiality to a third Person or to a Court."

The designation and treatment of both referenced documents as HIGHLY CONFIDENTIAL should be maintained based on the existence of multiple sensitive, highly confidential data points, particularly given that defendants are both a business partner and competitor of Chegg. The documents at issue specifically reveal the identity of, and information about not only Chegg, but also other entities with which Chegg does business and the nature and extent of Chegg's relationships with each of its business partners. The information is proprietary and would give Chegg's direct competitors, including defendants, an unfair advantage, as it reflects the size of the inventory Chegg keeps, the size of Chegg's business, the scope of Chegg's working relationship with its distribution partners, and the size of the counterfeit challenge in the inventory owned by Chegg and one of Chegg's distribution partners.

"[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599 (1978). While there is a common law presumption in favor of public access to judicial documents, that presumption "is not absolute." *See id*. at 598. "The court must balance

---

[2] During the deposition of Chegg's witness, it came to light that this document was inadvertently produced by Chegg without the appropriate HIGHLY CONFIDENTIAL designation, but was promptly reproduced with the proper HIGHLY CONFIDENTIAL designation the same day. The document was inadvertently produced without the appropriate confidentiality designation as a result of third-party Chegg's substantial efforts to search for and produce a voluminous set of documents in an extremely short time frame in response to defendants' belatedly issued subpoena. In meeting and conferring with defense counsel regarding this motion, defense counsel advised me that he did not believe the document should be treated as Highly Confidential because "it was not initially marked as Highly Confidential." This argument must be rejected out of hand. The Protective Order itself (and most litigants and courts) recognizes that inadvertent disclosures of privileged or confidential documents do not constitute a waiver of the designation, but rather, are common occurrences, and sets forth specific procedures for handling those inevitable inadvertent disclosures. *See* Protective Order, paragraph 3(d) ("A person's failure to designate a document, thing or testimony as Confidential or Highly Confidential does not constitute forfeiture of a claim of confidentiality as to any other document, thing, or testimony. A failure to designate a document, thing or testimony as Confidential or Highly Confidential, that a producer claims is inadvertent, shall be treated in the same fashion as a privileged or work product document under Federal Rule of Evidence 502."); *see also* Protective Order paragraph 5(d) (same).

The Honorable William H. Pauley, III
United States District Judge
November 8, 2017
Page 3

competing considerations" against the presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Among the "countervailing factors" that may outweigh the public interest in disclosure are "the privacy interests of those resisting disclosure," *id.*, including the interests based on the need to protect sensitive commercial information. *See* Fed. R. Civ. P. 26(c)(1)(G); *see also United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("the privacy interests of innocent third-parties should weigh heavily in a court's balancing equation" when considering whether to seal documents) (internal quotation marks and alterations omitted); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156-57 (S.D.N.Y. 2015) (finding that information disclosing innocent third-parties' "information concerning their trading strategies, objectives, and transactions" overcomes presumption of public access); *Lown v. Salvation Army, Inc.*, 2012 WL 4888534, at *2 (S.D.N.Y. Oct. 12, 2012) (privacy interests of "innocent third part[ies]" are "entitled to significant weight in the balancing against the public's right to access") (citing *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990)); *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 2017 U.S. Dist. LEXIS 62732, *7, 2017 WL 1483548 (W.D.N.Y. Apr. 25, 2017) (when the sensitive information of a third party is at issue, "the risk of harm to non-parties from disclosure is significant due to their inability to be present at day-to-day proceedings. . .") (quoting *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342 (N.D. Ill. 2008)); *EEOC v. Kronos Inc.*, 694 F.3d 351, 368 (3d Cir. 2012) (finding no error in providing additional protection to business interests of a third party); *Crane Plastics Co. v. Louisiana-Pac. Corp.*, 119 F. Supp. 2d 749, 751 (S.D. Ohio 2000) ("[T]he Court assigns greater weight to the confidentiality interests asserted by a non-party to the litigation. . . .").

There is no question that Chegg is an innocent third-party in this litigation. It has complied with its obligations under Rule 45 to produce relevant, responsive documents and provide a witness for two, full-day depositions. In doing so, it provided information and testimony to the parties that are sensitive and potentially damaging to its business.

Chegg therefore respectfully requests that the Court allow it to file its Motion under seal.

Respectfully submitted,

*/s/ Justin A. MacLean*

Justin A. MacLean

Application granted.

SO ORDERED:

Dated: November 9, 2017
New York, New York

WILLIAM H. PAULEY III
U.S.D.J.