**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, and PEARSON EDUCATION, INC.,<br><br>    Plaintiffs,<br><br>  v.<br><br>BOOK DOG BOOKS, LLC d/b/a TEXTBOOKRUSH and TEXTBOOKSRUS, APEX MEDIA, LLC, AND ROBERT WILLIAM MANAGEMENT, LLC,<br><br>    Defendants. | Case No. 1:16-cv-07123 (WHP) (GWG)<br><br>Judge William H. Pauley III |

| | |
|---|---|
| JOHN WILEY & SONS, INC., CENGAGE LEARNING, INC., and PEARSON EDUCATION, INC.,<br><br>    Plaintiffs,<br><br>  v.<br><br>BOOK DOG BOOKS, LLC and PHILIP SMYRES,<br><br>    Defendants. | Case No. 1:13-cv-00816 (WHP) (GWG)<br><br>Judge William H. Pauley III |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT,**
**PERMANENT INJUNCTION AND DISPOSITION ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

I.    Unanimous Jury Verdict On All Claims ..................................................................... 2

II.   Defendants' Continuing Infringement ........................................................................ 3

III.  Defendants' History Of Hiding Business Activities And Finances ......................... 4

ARGUMENT .............................................................................................................................. 5

I.    PARTIAL FINAL JUDGMENT UNDER RULE 54(B) IS NECESSARY TO PROTECT PLAINTIFFS' INTEREST IN THE JURY VERDICT AND THERE IS NO JUST REASON FOR DELAY ............................................................................. 5

    A.   The copyright and trademark claims are separate and distinct from the issue of attorneys' fees and costs ..................................................................................... 5

    B.   The copyright and trademark claims were decided with finality ................... 6

    C.   There is no just reason to delay entry of partial final judgment .................... 7

II.   PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST AS PART OF THE FINAL JUDGMENT .................................................................................... 9

    A.  Prejudgment interest is appropriate, especially given Defendants' willful misconduct.....9

    B.  The prejudgment interest rate should reflect the scope, duration and willfulness of Defendants' infringements ......................................................................... 10

III.  A PERMANENT INJUNCTION IS NECESSARY ............................................. 13

    A.  Plaintiffs have suffered irreparable injury ................................................... 14

    B.  Plaintiffs lack adequate remedies at law... .................................................. 15

    C.  The balance of hardships weighs heavily in Plaintiffs' favor... ................... 15

    D.  The public interest would not be disserved by an injunction... .................... 17

    E.  Plaintiffs' proposed injunction is carefully tailored to prevent future infringement.......17

IV.  PLAINTIFFS ARE ENTITLED TO A DISPOSITION OF INFRINGING MATERIALS....22

    A.  Defendants should be ordered to surrender all counterfeit books... ............. 23

CONCLUSION ......................................................................................................................... 24

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F. Supp.2d 952, 968 (S.D. Ohio 2005)....23

*Al-Jundi v. Oswald, No.* 75-CV-0132E(M), 1997 WL 736690, at *1 (W.D.N.Y. Nov. 4, 1997) ...............6

*BMG Music v. Pena*, No. 05 Civ. 2310(RJD)(MDG), 2007 WL 2089367, at *6 (E.D.N.Y. July 19, 2007) ................................................................................................................................................................21

*Bowne of N.Y. City, Inc. v. AmBase Corp.*, 161 F.R.D. 270, 273-74 (S.D.N.Y. 1995) .............................7

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 479 (D.N.J. 2009) ...............20

*Broad. Music, Inc. v. Prana Hospitality*, 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) ............................17

*Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 662 n.2.........................................10

*Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, No. 14- CV-6911 (VEC) (JLC), 2016 WL 658310, at *11 (S.D.N.Y. Feb. 17, 2016) ........................................................................................... 10

*C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 77 F. Supp. 3d 322, 326–27 (S.D.N.Y. 2014), aff'd sub nom. 634 F. App'x 57 (2d Cir. 2016).......................................................................................... 18

*CertainTeed Corp. v. Seattle Roof Brokers*, No. C 09-563 RAJ, 2010 WL 2640083, at *15 (W.D. Wash. June 28, 2010) .............................................................................................................................................21

*City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995 ......................................9

*Coach v. Weng*, No. 13-cv-445, Doc 39 (S.D.N.Y. 2013) ........................................................................ 18

*Columbia Pictures Indus., Inc. v. Screen Gems Film Co., Inc.*, No. 99 CIV. 4407 (WHP), 2001 WL 1254838, (S.D.N.Y. Oct. 18, 2001)................................................................................................................ 19

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08 CIV. 7497 KBF, 2014 WL 1883474, at *11 (S.D.N.Y. May 9, 2014) ............................................................................................................... 13, 22

*Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 464 (S.D.N.Y. 2017) .........................................17

*Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)......................................................... 6, 7

*Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950) .....................................................7

*Due Process, Ltd. v. Alternative Debt Servs., Inc.*, 2007 WL 1428661, at *5 (N.D.Fla. May 14, 2007) ..11

*Dunkin' Donuts Franchised Rests. LLC v. Tim & Tab Donuts, Inc.*, No. 07-CV-3662 (KAM) (MDG), 2009 WL 2997382, at *8 (E.D.N.Y. Sept. 15, 2009) ............................................................................. 14

## TABLE OF AUTHORITIES
(Continued)

*E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*, No. 08 CIV 4247 LTS FM, 2008 WL 4129987, at *1 (S.D.N.Y. Sept. 4, 2008) .................................................................................................... 5

*eBay v. MercExch.*, 547 U.S. 388, 391 (2006) ...................................................................... 13

*EMI Apr. Music Inc. v. 4MM Games, LLC*, No. 12 CIV. 2080 DLC, 2014 WL 1383468, at *1 (S.D.N.Y. Apr. 7, 2014) .......................................................................................................... 8

*Entral Group International, LLC v. Honey Café on 5th, Inc.*, No. 05 CV 2290 NGG MDG, 2006 WL 3694584, at *7 (E.D.N.Y. 2006) ................................................................................. 22

*Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc.*, No. 13-CV-04431 CBA RER, 2014 WL 4628910, at *5 (E.D.N.Y. May 8, 2014) .............................................................................................. 20

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 617 (S.D.N.Y. 2010) .......................................................................................................... 10, 11

*Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) ...................................................... 4

*Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992)  ......................... 5, 6, 7

*Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 387 (E.D.N.Y. 2013) .................................... 5, 8

*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp.2d 273, 307 (S.D.N.Y. 2002) ......................... 9

*Hilton v. Int'l Perfume Palace, Inc.*, No. 12-CV-5074 (JFB)(GRB), 2013 WL 5676582, at *14 (E.D.N.Y. Oct. 17, 2013) ........................................................................................................ 22

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F.Supp.2d 619, 634 (S.D.N.Y. 2011)  ...................................................................................................... 13, 14, 22, 23

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989)  ..................... 5

*Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 311 (2d Cir. 1987) ................... 10

*Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 396-97 (E.D.N.Y. 2008) ......................................................................................................................... 9, 10

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 732 (S.D.N.Y.1981)................... 15

*Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 463 (S.D.N.Y. 2012), aff'd, 760 F.3d 247 (2d Cir. 2014) .......................................................................................................... 8, 9, 20

*Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 00 MDL 1898 (SAS), 2010 WL 1328249, at *4 (S.D.N.Y. Apr. 5, 2010) ...................................................................................... 6

*Musical Prods., Inc. v. Roma's Record Corp.*, No. 05 Civ. 5903(FB)(VVP), 2009 WL 3052630, at *8 (E.D.N.Y. Sep. 23, 2009) ............................................................................................. 22, 23

**TABLE OF AUTHORITIES**
(Continued)

*My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir.1934) .................................................. 16

*Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 Civ. 2983(DLC)(KNF), 2006 WL 5804603, at *7 (S.D.N.Y. Dec. 11, 2006) ........................................................ 9, 10

*Nat'l Football League v. Primetime 24 Joint Venture*. No. 98 Civ. 3778, 1999 WL 760130, at *4 (S.D.N.Y. Sept. 27, 1999) ......................................................................................... 13

*Naughright v. Weiss*, No. 10 CIV. 8451, 2013 WL 1859221, at *1 (S.D.N.Y. May 2, 2013) ................... 6

*Oracle USA, Inc. v. Qtrax, Inc.*, 2011 WL 4853436, at *2 (N.D.Cal. Sept. 27, 2011) ........................... 11

*Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 570 (S.D.N.Y. 1995) ...................................... 22

*Petrello v. White*, No. 01–CV–3082, 2008 WL 5432230, at *2–5 (E.D.N.Y. Dec. 30, 2008) .................. 5

*Philip Morris USA Inc. v. U.S. Sun Star Trading*, Inc., No. 08–CV0068 (KAM)(JO), 2010 WL 2133937, at *14–15 (E.D.N.Y. Mar. 11, 2010) ......................................................................................... 9

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) ............... 14, 15, 16

*S.E.C. v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996) ...................................................... 11

*Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) ........................................................... 13

*Shen Mfg. Co., Inc. v. Suncrest Mills Inc.*, 673 F. Supp. 1199, 1207 (S.D.N.Y. 1987) ........................... 23

*Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 164-65 (2d Cir. 2005) ................................................. 5

*TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 CIV 6215 GBD FM, 2012 WL 760168, at *1 (S.D.N.Y. Feb. 23, 2012) ......................................................................................................... 9

*Tomelleri v. Quick Draw, Inc.*, No. 2:14-CV-02441-CM-JPO, 2016 WL 2755835, at *3 (D. Kan. May 12, 2016) ....................................................................................................................... 11

*Triangl Group Limited v. Jiangmen City Xinhui Lingzhi Garment Co. Ltd.*, No. 16 Civ. 1498 PGG, 2017 WL 2829752, at *10 (S.D.N.Y. June 22, 2017) ............................................................. 19, 21

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013) .......................................................................................... 13

*U.S. v. Everoff*, No. 00-CV-6029 (DGT), 2001 WL 1571881, at *9-*10 (E.D.N.Y. Nov.6, 2001) ......................................................................................................... 8

*United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972) .................................. 17

*United States v. N.Y. Fish, Inc.*, 10 F. Supp. 3d 355, 379 (E.D.N.Y. 2014) ........................... 17

**TABLE OF AUTHORITIES**
(Continued)

*Victorinox AG v. B & F Sys., Inc.*, No. 13 CIV. 4534 (JSR), 2017 WL 6888272, at *4 (S.D.N.Y. Dec. 20, 2017) ............................................................................................................................. 19

*Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) ...................... 15, 16

*Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-CV-755-T-26EAJ, 2014 WL 2778356, at *2 (M.D. Fla. June 18, 2014) ................................................................................................. 11

## Statutes

15 U.S.C. § 1116 ....................................................................................................................... 13

15 U.S.C. § 1118 ....................................................................................................................... 21

17 U.S.C. § 502 ......................................................................................................................... 13

17 U.S.C. § 503 ......................................................................................................................... 21

## Rules

Fed. R. Civ. P. 54 ................................................................................................................... 4, 5

N.Y. C.P.L.R § 5004 ................................................................................................................. 10

**INTRODUCTION**

Plaintiffs submit this post-trial brief to protect their interests and bring final resolution to the bulk of this decade-long dispute. After an initial infringement lawsuit and settlement, continued infringements that brought a pair of additional cases, seemingly countless motions granted regarding Defendants' vexatious (and several times sanctioned) conduct, and a lengthy trial, the jury unanimously found Defendants liable for willfully infringing Plaintiffs' valuable trademarks and copyrights and awarded Plaintiffs $34.2 million in damages.

Defendants continued to infringe even during the pendency of these cases, up to and through trial. They maintain an unduly complex (and, at best dubious) corporate structure, substantial overseas connections, and have a penchant—both in and out of court—for skirting their legal obligations. Accordingly, Plaintiffs respectfully request the Court promptly: (i) enter the jury's verdict on Plaintiffs' copyright and trademark claims into a Partial Final Judgment that can be secured as soon as possible; (ii) issue a permanent injunction tailored to prevent Defendants from continuing to infringe; and (iii) order Defendants to surrender any counterfeit books in their possession published by Plaintiffs through a disposition order. These requests are traditional in nature and would likely be uncontested by other parties, but in the context of this case will likely be hotly contested.[1]

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court has discretion to grant partial final judgment in cases where there is no just reason for delay. This case was

---

[1] Consistent with the Court's guidance to the parties to work together in hopes of minimizing disputes, Plaintiffs shared with Defendants on April 17, 2018 a draft of their Proposed Partial Final Judgment, Permanent Injunction and Disposition Order, attached hereto as Exhibit A, and sought their consent or to confer on any issues. Defendants declined to engage in any meaningful way and provided no feedback whatsoever on the proposed order. They simply rejected it as premature.

tailor made for the application of Rule 54(b).  A nine-person jury unanimously found Defendants

liable on all of Plaintiffs' trademark and copyright infringement claims and awarded $34.2

million in statutory damages.  The only issue remaining on those claims is the appropriate

amount of attorneys' fees and costs as permitted by the Copyright and Lanham Acts.  Courts

routinely enter Rule 54(b) final judgment when only the question of attorneys' fees and costs

remains and this Court should too.  Doing so will maximize efficiency, conserve judicial

resources, and protect Plaintiffs' interests under the jury verdict.[2]

The Copyright Act and Lanham Act provide that a Court may grant final injunctions and

disposition orders deemed reasonable to prevent infringement of copyrights and trademarks.  The

jury concluded that Defendants engaged in extensive copyright and trademark infringement and

Defendants have proffered no reason to believe they will change their illicit practices.  In fact,

evidence offered during trial indicated that their infringing behavior continues and their

misconduct during the case only heightens this concern.  A permanent injunction and disposition

order are thus necessary to prevent Defendants from engaging in further infringing activity.

## BACKGROUND

### I.    Unanimous Jury Verdict On All Claims

On April 5, 2018, after more than five years of contentious litigation on Plaintiffs' two

separate lawsuits ("*BDB I*" and "*BDB II*"), a nine-person jury unanimously found Defendants'

liable for willful infringement of Plaintiffs' copyrights and trademarks and for breach of the

parties' prior settlement agreement.  (ECF No. 414.)  The jury awarded Plaintiffs $34,200,000 in

---

[2] For clarity, the instant motion does not seek entry of final judgment on Plaintiffs' successful breach of contract claim, for which an assessment of attorneys' fees as damages remains outstanding.  Plaintiffs' pending motion for fees and costs will thus address both attorneys' fees as damages on their contract claims and reasonable fees under the Copyright and Lanham Acts.

total damages—with particularized damages set forth on a work-by-work basis and well within the statutory ranges dictated by Congress for willful copyright and trademark violations. *Id.* The sole issue remaining to be decided is an award of reasonable attorneys' fees and costs by the Court—both as a discretionary award under the Copyright and Lanham Acts and as an element of damages under the contract claim.

## II.   Defendants' Continuing Infringement

Despite Plaintiffs' many notices to Defendants and consistent efforts to deter their continued infringements, Defendants have been infringing Plaintiffs' rights for more than a decade and continue to do so today. Following the 2008 settlement of the parties' initial lawsuit, Plaintiffs gave notice of additional infringements in 2011 and filed *BDB I* in February 2013. *BDB I*, ECF No. 1. Defendants continued to infringe for years thereafter, including throughout discovery in *BDB I*, thereby necessitating Plaintiffs' filing of *BDB II* in September 2016. *BDB II*, ECF No. 1.

Defendants' illegal conduct persists to this day. Plaintiffs recently provided notice to Defendants of their continuing infringement, including counterfeit sales of at least 47 additional titles in the six months leading up to trial. March 26, 2018 Trial Tr. at 1026:9-1031:6. And even since trial, Plaintiffs have continued to identify still more counterfeits distributed by Defendants. Declaration of Jeffrey M. Gould, ¶ 3.

## III.   Defendants' History of Hiding Business Activities and Finances

For years, Defendants have structured their businesses in a way to mask the nature, flow, scale and profits of their businesses. Defendant Philip Smyres owns at least 24 separate companies that participate in his book-buying enterprise, many of which buy and sell and

transfer inventory to and from each other.  March 23, 2018 Trial Tr. at 766:13-15 and 767:9-14.[3]
Several of his companies are located overseas, *id.* at 772:12-20 and 774:3-13, others are set-up
specifically to import books from abroad, *id.* at 774:14-22, and, as mountains of evidence at trial
demonstrated, Defendants have purchased books and done business overseas with counterfeit
sources for many years.

Throughout these cases, Defendants have stonewalled when ordered to disclose their
corporate structure, operations and finances.  The Court recently recognized Defendants'
unending litigation misconduct and sanctioned them for repeatedly violating Court orders to
disclose the true structure and finances of their businesses.  ECF. No. 413 and April 3, 2018 Trial
Tr. at 2810-2814.  As the Court explained in granting an adverse infererence instruction,
"Defendants knew of their obligation to produce all business and entities engaged in book-
related commerce in which Philip Smyres has any interest or relationship since this Court's order
in September 2013.  And in May 2017, defendants were again ordered to reveal any entity
through which they conduct their business."  April 3, 2018 Trial Tr. at 2813:11-15.  Indeed,
"[t]he staggering number of times that this Court and Magistrate Judge Gorenstein had to order
defendants to produce further discovery leads this Court to conclude that defendants' omissions
were not accidental.  This is also unlikely, based upon the sheer volume of information that
plaintiffs just discovered or that defendants just recently revealed."  *Id.* at 2814:9-14.

One of the key issues leading to this sanction was Defendants' control and operation of a
supposed third-party entity, Matasa Agila Holding, LLC, that conducts all of Defendant Book
Dog Book's rental activity.  The Court recognized Matasa for the sham that it is, explaining that
"Matasa is no mere affiliate.  It works out of Book Dog's warehouse, has one employee, and acts

---

[3] Exhibit 1 to the Declaration of Jeffrey M. Gould compiles all referenced trial transcript cites.

as the rental arm of Book Dog's business." *Id.* at 2813.  The Court found credible and endorsed Plaintiffs' concern that Defendants continuously and repeatedly refused to provide the required transparency on their businesses.  To this day, Plaintiffs still do not know the full extent of Defendants' web of businesses and affiliated companies, let alone their finances.

## **ARGUMENT**

I.  **PARTIAL FINAL JUDGMENT UNDER RULE 54(B) IS NECESSARY TO PROTECT PLAINTIFFS' INTERESTS IN THE JURY VERDICT AND THERE IS NO JUST REASON FOR DELAY.**

Rule 54(b) allows for entry of partial final judgment on less than all claims where equitable and practical circumstances warrant.  *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015); *see* Fed. R. Civ. P. 54(b).  Thus, a district court may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" upon a determination "that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Courts have read this rule as embodying three requirements: "(1) there are multiple claims or parties; (2) at least one of the claims or the rights and liabilities of at least one party has been determined with finality; and (3) there is no just reason for delay." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 164-65 (2d Cir. 2005).  The increasingly complex nature of modern litigation "cr[ies] out for flexibility in granting partial judgments[.]"  *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992).  As set forth below, all factors are met here.

a.  **The copyright and trademark claims are separate and distinct from the issue of attorneys' fees and costs.**

The first requirement, "multiple claims," evaluates whether the issues that have been decided in the district court constitute independent "claims" on which partial judgment can be entered.  In making that determination, courts assess whether the "operative facts" underlying the decided claims are "separate and distinct" from those of remaining claims, *i.e.*, whether they are

susceptible to independent review as opposed to being "interrelated and dependent upon each other." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989).

There can be no doubt there are "multiple claims" for purposes of Rule 54(b) or that the operative facts underlying the question of attorneys' fees and costs are sufficiently "separate and distinct" from those of the underlying claims for the purposes of Rule 54(b). *See, e.g., E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*, No. 08 Civ. 4247 (LTS) (FM), 2008 WL 4129987, at *1 (S.D.N.Y. Sept. 4, 2008) (granting Rule 54(b) motion where issue of costs and fees remained); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 387 (E.D.N.Y. 2013) (issuing final 54(b) judgment for all issues excluding attorneys' fees); *Petrello v. White*, No. 01–CV–3082 (DRH)(MLO), 2008 WL 5432230, at *2–5 (E.D.N.Y. Dec. 30, 2008) (granting Rule 54(b) motion to enter final judgment despite "unresolved issues of attorneys' fees, even if said fees are sought as an element of damages"); *Al-Jundi v. Oswald, No.* 75-CV-0132E(M), 1997 WL 736690, at *1 (W.D.N.Y. Nov. 4, 1997) (granting entry of partial final judgment of jury verdict, with an order to file any motions for attorney's fees, costs, and other expenses after such judgment has been entered); *c.f. Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 202-203 (1988) (adopting as a bright line rule that "a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case").

### b. The copyright and trademark claims were decided with finality.

The second requirement, "finality," asks whether the resolution of the decided claim "ends the litigation of that claim on the merits and leaves nothing for the Court to do but execute the judgment entered on that claim." *Ginett*, 962 F.2d at 1092 (internal marks omitted).  The jury's verdict clearly meets this element.  Aside from the amount of attorneys' fees and costs, the

6

merits of all of Plaintiffs' copyright and trademark claims and damages have been decided with finality by the jury in both cases. *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 00 MDL 1898 (SAS), 2010 WL 1328249, at *4 (S.D.N.Y. Apr. 5, 2010) (granting Rule 54(b) motion after jury verdict because the merites of all claims were "fully litigated and there is nothing for the court to do but execute the judgment").

### c.  There is no just reason to delay entry of partial final judgment.

The third requirement, "no just reason for delay," "is left to the sound judicial discretion of the district court" and "is to be exercised in the interest of sound judicial administration." *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).  The two guiding principles are (i) the promotion of judicial efficiency, and (ii) the balance of equities as to the parties.  *See Naughright v. Weiss*, No. 10 Civ. 8451, 2013 WL 1859221, at *1 (S.D.N.Y. May 2, 2013).

Delaying the inevitable execution of the judgment would serve no valid purpose; on the contrary, it would undermine the principle of judicial efficiency.  Defendants' liability on the copyright and trademark claims is final with nothing left to resolve.  The Court's calculation of attorneys' fees and costs could not have any effect on that existing liability.  Briefing on and resolution of the appropriate attorneys' fees and costs could likely take several months, particularly given Defendants' penchant for litigating every issue to the hilt and relitigating previously resolved issues.[4]  Prompt entry of Partial Final Judgment will advance the case

---

[4]  Defendants' unending attempt to relitigate their failed MBS Summary is a prime, but by no means the only, example of Defendants' approach to litigation.  *See* March 29, 2018 Trial Tr. at 2071:8-20 ("So at the end of the day, the defendants' new arguments do not alter this Court's conclusion, since this issue was first raised nearly two months ago and as was made clear in conferences last week with MBS. . . . Accordingly, for the third or fourth, but certainly the final time, defendants' application to admit the MBS summary is denied.")

without delay and reduce, if not eliminate, the need for separate motions and other steps relating to prejudgment asset freezes and attachments to secure the verdict.

Equitable considerations strongly favor prompt entry of Partial Final Judgment, as well. Delaying the judgment would prejudice Plaintiffs' ability to collect damages from Defendants, which is "exactly the sort of hardship and denial of justice through delay that rule 54(b) was designed to eliminate." *Ginett*, 962 F.2d at 1097 (quoting *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950) (internal quotation marks omitted). As courts routinely recognize, if "a delay in entry of judgment" on a party's claims would impair that party's "ability to collect on the judgment, that would weigh in favor of certification" under Rule 54(b). *Curtiss-Wright Corp.*, 446 U.S. at 12.

Throughout this litigation, Defendants have actively concealed their true corporate structure and financial information—even in the face of multiple, direct court orders to provide such information. See *supra* at 3-4. Defendants have extensive connections and affiliates overseas, at least some of which are actively involved in Defendants' counterfeiting activities. Because of Defendants' tactics, Plaintiffs still do not have a clear picture of which affiliated entities in which countries are involved in the distribution of counterfeit books, where to look for a full accounting of Defendants' profits from their infringing acts and overall operations, or how such profits are distributed among Defendants' affiliated domestic and foreign entities.

Defendants' well-documented history of illegal conduct, corporate structuring domestically and abroad in a manner that has obscured the true nature of their operations and finances, and repeated violations of this Court's orders to reveal information regarding their finances, demonstrates the danger Defendants will hinder Plaintiffs' ability to collect upon the jury's verdict. Plaintiffs have reasonable concerns that Defendants may seek to hide or dissipate

assets through existing or newly created entities, corporate structuring, or overseas connections. Every day that passes without final judgment entered increases that risk.  *See Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 387 (E.D.N.Y. 2013) (finding no just reason for delay in entering 54(b) judgment for plaintiffs to enforce it "in light of plaintiffs' accusations that defendants are hiding assets"); *U.S. v. Evseroff*, No. 00-CV-6029 (DGT), 2001 WL 1571881, at \*9-\*10 (E.D.N.Y. Nov.6, 2001) (granting 54(b) certification where fear existed that defendant would hide assets to avoid paying a judgment).

## II.  PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST AS PART OF THE FINAL JUDGMENT.

### a.  Prejudgment interest is appropriate, especially given Defendants' willful misconduct.

Awarding prejudgment interest on copyright and trademark claims is within the discretion of the trial court and courts within this circuit routinely award it.  *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 264 (2d Cir. 2014) (awarding prejudgment interest for trademark infringement damages on findings of willfulness and bad faith); *EMI Apr. Music Inc. v. 4MM Games, LLC*, No. 12 Civ. 2080 (DLC), 2014 WL 1383468, at \*1-2 (S.D.N.Y. Apr. 7, 2014) (awarding prejudgment interest on statutory damages for copyright violations); *Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 Civ. 2983(DLC)(KNF), 2006 WL 5804603, at \*7 (S.D.N.Y. Dec. 11, 2006) (awarding prejudgment interest, noting that such award gives effect to congressional intent), adopted by 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007);  *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp.2d 273, 307 (S.D.N.Y. 2002) (awarding prejudgment interest given infringer's "willful intent to profit illegally" from plaintiff's brand).

A basic principle underlying prejudgment interest awards is to "ensure that an injured party is fully compensated for its loss."  *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*,

515 U.S. 189, 195 (1995).  Awarding prejudgment interest also furthers the congressional intent

of "(i) ensur[ing] that an infringer not profit in any way from its misconduct; and (ii) provid[ing]

a specific and general deterrent to those who might exploit another's trademark rights without

authorization." *Specialty Food Trade,* 2006 WL 5804603, at *7.  In trademark cases,

prejudgment interest is normally reserved for "exceptional" cases, *Merck*, 760 F.3d at 264, and is

an "appropriate component of the remedy" on statutory damages. *Johnson & Johnson Consumer*

*Cos. v. Aini*, 540 F. Supp. 2d 374, 396-97 (E.D.N.Y. 2008).

      Prejudgment interest is particularly appropriate here given Defendants' willful

infringements, Defendants' repeated refusals to comply with court orders and attempts to

frustrate the judicial process, and the length of time it has taken to get this case to judgment. *See*

*supra* at 3-4, 7-8 (discussing the Court's sanctions order regarding Defendants' litigation

misconduct).  As such, this is certainly an "exceptional case" meriting prejudgment interest on

trademark and copyright damages. *See Merck*, 760 F.3d at 264; *Philip Morris USA Inc. v. U.S.*

*Sun Star Trading*, Inc., No. 08–CV0068 (KAM)(JO), 2010 WL 2133937, at *14–15 (E.D.N.Y.

Mar. 11, 2010) (awarding prejudgment interest where defendants "not only acted willfully, but

[their] attempts to frustrate the judicial process make the case exceptional"); *Johnson*, 540

F.Supp.2d at 396–97 (awarding prejudgment interest given defendant's willful blindness).

    **b. The prejudgment interest rate should reflect the scope, duration and**
       **willfulness of Defendants' infringements.**

      Where a court awards prejudgment interest, "it is within the trial court's discretion to

choose what rate to apply." *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, No. 14-

CV-6911 (VEC) (JLC), 2016 WL 658310, at *11 (S.D.N.Y. Feb. 17, 2016).

      For trademark damages, courts have adopted a "wide variety of prejudgment interest

rates[,]" taking into consideration the specific facts of each case. *Fendi Adele S.R.L. v.*

*Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 617 (S.D.N.Y. 2010).  Courts

in this district routinely apply the 9% statutory rate under New York Civil Practice Law and

Rules § 5004, compounded annually, to trademark damages. *See, e.g., Bumble & Bumble,* No.

14- CV-6911 (VEC) (JLC), 2016 WL 658310, at *12 (S.D.N.Y. Feb. 17, 2016) (awarding 9%

for willful trademark infringements); *Specialty Food Trade,* 2006 WL 5804603, at *5–7 (same).

For copyright damages, courts award prejudgment interest from the date of infringement

to entry of judgment, compounded annually.  *Broadcast Music, Inc. v. R Bar of Manhattan, Inc*.,

919 F.Supp. 656, 662 n.2 (S.D.N.Y. 1996).  While courts in this circuit have, at times, awarded

lower prejudgment interest rates for copyright damages than the 9% routinely awarded for

trademark damages,[5] "the rate of interest used in awarding prejudgment interest rests firmly with

the sound  discretion of the trial court," *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d

293, 311 (2d Cir. 1987), and there is no reason to use a lower rate for copyright damages than for

trademark damages here given the unified course of willful conduct on all claims.

Nor is applying the state statutory prejudgment interest rate to copyright damages an

unusual practice.  *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-CV-755-T-26EAJ,

2014 WL 2778356, at *2 (M.D. Fla. June 18, 2014) (applying 6% Florida statutory rate and

stating that "[t]he rate of prejudgment interest may be determined from state law"); *Due Process,*

*Ltd. v. Alternative Debt Servs., Inc.*, No. 3:03cv580/MCR/MD, 2007 WL 1428661, at *5

(N.D.Fla. May 14, 2007) (awarding prejudgment interest using Florida statutory rate in copyright

infringement case); *Tomelleri v. Quick Draw, Inc*., No. 2:14-CV-02441-CM-JPO, 2016 WL

---

[5] Some courts in this district award prejudgment interest at a rate based on the 52-week United States Treasury bill rate in effect on the date of each of the respective infringements, compounded annually. *R Bar of Manhattan, Inc*., 919 F.Supp. at 661; *Softel, Inc. v. Dragon Medical and Scientific Comm'ns Ltd.*, 891 F. Supp. 935, 944 (S.D.N.Y. 1995).

2755835, at *3 (D. Kan. May 12, 2016) (adopting Kansas statutory rate of 10% in copyright infringement case as the "presumed economic rate for prejudgment obligations in this state"); *Oracle USA, Inc. v. Qtrax, Inc.*, No. C09-3334 SBA (BZ), 2011 WL 4853436, at *2 (N.D.Cal. Sept. 27, 2011) (exercising discretion in copyright infringement case to apply 7% state rate of prejudgment interest).

Given Defendants' willful infringements spanning more than a decade and their repeated attempts to frustrate the judicial process through vexatious litigation tactics and violations of court orders, the New York statutory rate of 9% prejudgment interest is warranted here.  Further, as prejudgment interest aims to prevent Defendants from being unjustly enriched by "obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity," *S.E.C. v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996), the prejudgment interest assessed should bear some relationship to Defendants' actual borrowing costs during the time at issue.  *See Fendi*, 689 F. Supp. 2d at 612 (prejudgment interest "prevent[s] unjust enrichment of defendants by the interest-free use of ill-gotten profits").

The record at trial showed that Defendants paid 12% interest, plus between 27.5% and 43.75% of profits derived from the sales and rentals of certain inventory, to borrow $70 million between 2012 and 2014 from Garrison Commercial Funding.  Mar. 29, 2018 Trial Tr. at 1959:15-1960:12.  The New York statutory rate of 9% thus considerably understates Defendants' actual borrowing costs during the period in question.

Plaintiffs thus request 9% prejudgment interest on all trademark and copyright damages. The trigger date for assigning interest is also within the Court's discretion and many courts look to the date of infringement.  Here that could be as early as 2008-2010, and certainly as early as August 5, 2011 for *BDB I*—the date of Plaintiffs' cease and desist letter.  March 23, 2018 Trial

Tr. at 925:24-926:19.  Plaintiffs would be fully justified in proposing that as the trigger date for interest and thus requesting over $24 million in prejudgment interest in *BDB I* alone.  In an effort to compromise and reach resolution, however, Plaintiffs request prejudgment interest only from the date of the complaints in each case—February 4, 2013 for *BDB I* and September 12, 2016 for *BDB II*.  Accordingly, Plaintiffs request the following prejudgment interest:

- *BDB I* – 9% interest running from February 4, 2013, compounded annually, on $18,000,000 in trademark damages and $12,200,00 in copyright damages, for a total of $17,740,180 in prejudgment interest, as of April 23, 2018, plus $12,067 per day after April 23, 2018 until judgment is entered;

- *BDB II* – 9% interest running from September 12, 2016, compounded annually, on $2,000,000 trademark damages and $2,000,000 in copyright damages, for a total of $599,740 in prejudgment interest, as of April 23, 2018, plus $1,075 per day after April 23, 2018 until judgment is entered.

## III.   A PERMANENT INJUNCTION IS NECESSARY.

A permanent injunction is necessary to prevent Defendants' future infringing activities. Defendants have shown no inclination to cease distributing counterfeit books. As shown at trial through numerous notices of continuing infringments, Plaintiffs continue to acquire counterfeit books regularly through test purchases from Defendants.  Nothing short of a court-ordered injunction will stop Defendants from further violating Plaintiffs' trademarks and copyrights.

Both the Copyright and Lanham Acts expressly authorize injunctions to prevent future trademark or copyright infringement by a defendant.  17 U.S.C. § 502(a); 15 U.S.C. § 1116. "[P]ermanent injunctions are generally granted where liability has been established and there is a threat of continuing infringement."  *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08 CIV. 7497 KBF, 2014 WL 1883474, at *11 (S.D.N.Y. May 9, 2014); *see also Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F.Supp.2d 619, 634 (S.D.N.Y. 2011) (granting injunction as "[t]he only remedy that can prevent such infringement" and noting defendant's "conduct

hardly suggests that it will refrain from infringing [p]laintiffs' copyright in the future.").  "In many instances, injunctive relief may be the best or only way to preserve the exclusivity of a copyright." *Complex Sys.*, 2014 WL 1883474, at *11.

A plaintiff seeking a permanent injunction must demonstrate the following four factors: (i) it has suffered an irreparable injury; (ii) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (iii) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (iv) the public interest would not be disserved by a permanent injunction.  *EBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *accord Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013) (applying the *eBay* four-factor test to permanent injunctions in cases dealing with trademark and copyright).  Here, all four factors strongly favor a permanent injunction.

### a.  Plaintiffs have suffered irreparable injury.

Irreparable injury "is automatically satisfied by actual success on the merits," *Dunkin' Donuts Franchised Rests. LLC v. Tim & Tab Donuts, Inc.*, No. 07-CV-3662 (KAM) (MDG), 2009 WL 2997382, at *8 (E.D.N.Y. Sept. 15, 2009), and the jury's verdict demonstrates resounding success on the merits.  Even beyond this *per se* rule, irreparable injury may be shown in other ways and there can be no doubt Plaintiffs will suffer it absent an injunction, including through reputational harm and loss of goodwill and an unknowable volume of sales.

"Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer."  *Hounddog Prods.,* 826 F. Supp. 2d at 632.  Irreparable harm may even be established where the plaintiff has simply alleged and presented evidence of copyright and trademark

infringement—which Plaintiffs have done in spades. *Rovio Entm't, Ltd. v. Allstar Vending, Inc*., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015). Plaintiffs presented overwhelming and compelling evidence at trial of Defendants' infringing acts and Plaintiffs' reputational harm and loss of sales, *e.g.*, March 20, 2018 Trial Tr. at 162:14-165:18, based on which the jury found willful infringement on every trademark and copyright claim.

Irreparable harm may also be demonstrated by past infringement and a substantial likelihood of future infringement. Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06 [B] (2007) ( "Generally, it would appear to be an abuse of discretion to deny a permanent injunction where liability has been established and there is a threat of continuing infringement."). Defendants have a lengthy history of infringing Plaintiffs' copyrights and trademarks, dating back to Plaintiffs' first lawsuit and settlement in 2007-2008. After entering into that settlement, Defendants continued to purchase counterfeits from the exact same source that provided counterfeits previously, forcing Plaintiffs to file their second lawsuit in 2013 (*BDB I*). Undeterred, Defendants continued to sell counterfeits of Plaintiffs' textbooks for years thereafter, leading to Plaintiffs' third suit in 2016 (*BDB II*). Plaintiffs recently provided notice to Defendants of their continuing infringement, including counterfeit sales of at least 47 additional titles in the six months leading up to trial. March 26, 2018 Trial Tr. at 1026:9-1031:6. And even after trial, Plaintiffs have continued to identify still more counterfeits distributed by Defendants. Gould Decl. at ¶ 3. Defendants' unabashed purchasing from known counterfeit sources and unknown and unverified sources demands an injunction.

### b. Plaintiffs lack adequate remedies at law.

Defendants' continuing infringement demonstrates the lack of adequate remedies at law. *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d at 536, 547 (S.D.N.Y. 2015) (finding

monetary damages insufficient where defendants continued to infringe despite repeated notice, which "suggests that [defendants] might continue to engage in infringing activities and counterfeiting unless enjoined by the Court"); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008)  (holding money damages an insufficient remedy "[i]n view of the irreparable harm that would flow from Defendant's continuing infringement, including lost sales of [plaintiff's copyrighted books] and the injury to [plaintiff] as a writer"); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 732 (S.D.N.Y.1981) (finding money damages insufficient remedy given strong probability defendant would continue to infringe plaintiff's copyright).  As explained above, Plaintiffs have, time and time again, put Defendants on notice and demanded that they cease their infringing activity but Defendants' infringements persist.  Given the difficulties in identifying the full scope of the infringing sales or remedying the loss of goodwill, Plaintiffs could never be made whole through monetary damages alone.

### c.  The balance of hardships weighs heavily in Plaintiffs' favor.

Plaintiffs are the owners and exclusive licensees of valuable copyrights and trademarks, who suffer economic and reputation harm with every counterfeit textbook Defendants sell. March 20, 2018 Trial Tr. at 162:14-165:18.  Defendants are willful and massive infringers of Plaintiffs' valuable marks and works.  ECF No. 414.  There can be no doubt that the balance of hardships absent an injunction weighs heavily in Plaintiffs' favor.

Plaintiffs lose substantial revenue and the exclusive right to control their protected copyrights and trademarks with every counterfeit Defendants sell.  Congress recognized this harm in establishing statutory damages schemes in both the Copyright and Lanham Acts, and the jury recognized this in awarding statutory damages for Defendants' misdeeds.  Absent an injunction, Plaintiffs' incentive to create valuable works for public use will deteriorate and they

will lose control over their exclusive rights.  Defendants only possible claim to harm by the injunction is the loss of the chance to sell an infringing book, but "the law does not protect this type of hardship."  *Warner Bros.*, 575 F. Supp. 2d at 553,  *My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir.1934); *see also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) ("As to the balance of hardships, [i]t is axiomatic that an infringer ... cannot complain about the loss of ability to offer its infringing product.") (quotations omitted).

### d.  The public interest would not be disserved by an injunction.

Enjoining Defendants from selling counterfeit books and related activities would not disserve the public interest.  To serve the public interest, copyright law must "prevent[] the misappropriation of the skills, creative energies, and resources which are invested in the protected work."  *Warner Bros*, 575 F. Supp. 2d at 553.  A permanent injunction here would serve that public interest by "prevent[ing] the possible proliferation of [infringing] works[,]" which, among other things, would avoid "deplet[ing] the incentive for original authors to create new works."  *Id.*  Defendants' continued infringements make it more and more difficult for Plaintiffs to invest the necessary resources into creation of new educational materials.  With each counterfeit sold, authors lose royalties, publishers lose revenue, and students lose the benefit of advancements in arts and sciences.  March 20, 2018 Trial Tr. at 162:14-165:18.  The public interest demands an injunction issues here.

### e.  Plaintiffs' proposed injunction is carefully tailored to prevent future infringement.

To remedy a reasonable likelihood of future violations, an injunction "may sweep broadly in its prohibition if that is necessary to enjoin future violations which appear likely to occur[.]"  *United States v. N.Y. Fish, Inc.*, 10 F. Supp. 3d 355, 379 (E.D.N.Y. 2014), (citing *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972)).  Here, Plaintiffs have

carefully tailored the terms of their proposed injunction to prevent Defendants' future copyright and trademark infringement, without unduly burdening Defendants' legitimate business or reaching any further than necessary. *See* Plaintiffs' Proposed Partial Final Judgment and Permanent Injunction ("Proposed Injunction"), attached as Exhibit A.

*First*, it is axiomatic that an injunction arising from past infringing conduct and a risk of continuing infringement should include a prohibition on future infringement, and the Proposed Injunction does just that. Ex. A at ¶ 5(a) (Defendants shall "not infringe any copyrights or trademarks for which any of the Plaintiffs is the owner of exclusive licensee . . ."). This is the most basic and common provision included in copyright and trademark-related injunctions and is wholly appropriate here. *See, e.g., Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 464 (S.D.N.Y. 2017) (permanently enjoining defendants from "engaging in any other acts of trademark infringement, unfair competition, false advertising or dilution involving Plaintiffs' fragrances, marks and trade dress"); *Broad. Music, Inc. v. Prana Hospitality*, 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (permanently enjoining "defendants and all persons acting under their permission or authority from further infringing any copyrighted musical compositions" licensed by plaintiff); *Coach v. Weng*, No. 13-cv-445, Doc 39 (S.D.N.Y. 2013) (enjoining defendants from "further infringing or diluting the Coach Registered Trademarks by … distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Coach bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Coach Registered Trademarks"). *Columbia Pictures Indus., Inc. v. Screen Gems Film Co., Inc.,* No. 99 Civ. 4407 (WHP), 2001 WL 1254838, at *10 (S.D.N.Y. Oct. 18, 2001) (Pauley, J.) (granting permanent injunction preventing Defendant from using the infringing mark).

*Second*, Defendants should be enjoined from returning any suspected or potential counterfeit books to suppliers or other sellers.  Ex. A at ¶ 5(c).  Returning counterfeit books causes, assists, or enables those sellers to turn around and sell them to other buyers, thus undermining Plaintiffs' efforts to take counterfeit books out of circulation.  *See C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 77 F. Supp. 3d 322, 326–27 (S.D.N.Y. 2014), *aff'd*, 634 F. App'x 57 (2d Cir. 2016) (enjoining defendant from returning any goods falsely bearing the trademark in question).  Testimony at trial demonstrated that when Defendants returned counterfeit books to Mark Blackerby, he sold them.  March 29, 2018 Trial Tr. at 1785:6-1786:12.  Defendants' own Terms and Conditions already provide that Defendants may retain without payment, and not return to suppliers, any suspected counterfeits.  March 27, 2017 Trial Tr. at 1518:14-1519:19.  Every supplier that sells books to Defendants through their websites agrees to that term.  *Id.*  In addition, a document purporting to be Defendants' counterfeit policy, which Mr. Smyres sent to Amazon, states that they remove suspected counterfeit books from the stream and not return them to suppliers.  March 26, 2018 Trial Tr. at 996:4-18 (discussing PX 288).  Given this is already Defendants' actual policy, certainly there can be no claim of hardship or prejudice in having to comply with it.

*Third*, Defendants should also be enjoined from "effect[ing] any assignments or transfers, form[ing] new entities or associations or utiliz[ing] any other device or contrivance" to avoid any injunctive orders or payment obligations.  Exh. A at ¶ 5(d).  As explained above, see *supra* Section I.c., Plaintiffs have legitimate concerns that Defendants may attempt to hide or dissipate assets or operations through existing or newly created entities, corporate structuring, shoddy record-keeping, or overseas connections.  It is imperative that Defendants not escape the consequences of their misconduct by moving their illicit operations or transferring assets to

avoid their obligations.  Given Defendants' history of creating sham companies like Matasa

Agila Holdings to obscure their rental operations, the potential for mischief is well founded.

*Fourth*, considering Defendants' past misconduct and failure to abide by the Court's

orders, Defendants should be required to certify compliance in a sworn writing.  Exh. A at ¶ 5(e)

("Within the period of ninety (90) to one-hundred and twenty (120) days from the date of

issuance of this Permanent Injunction, and on an annual basis for the next ten (10) years

thereafter, provide Plaintiffs with a sworn declaration certifying their compliance with the

injunction.")  Certifying compliance with injunctions is common and reduces the possibility that

Defendants will yet again defy this Court's orders.  *See Victorinox AG v. B & F Sys., Inc.*, No. 13

Civ. 4534 (JSR), 2017 WL 6888272, at *4 (S.D.N.Y. Dec. 20, 2017) (discussing "Report of

Defendants' Compliance with Permanent Injunction" submitted by defendants); *Triangl Grp.

Ltd. v. Jiangmen City Xinhui Dist. Lingzhi Garment Co.*, No. 16 CIV. 1498 (PGG), 2017 WL

2831025, at *3 (S.D.N.Y. June 22, 2017) (requiring "a report in writing under oath setting forth

the detail the manner and form in which the [defendants] have complied with the injunction");

*Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc.*, No. 13-CV-04431 (CBA)(RER), 2014 WL

4628910, at *5 (E.D.N.Y. May 8, 2014), *report and recommendation adopted*, 2014 WL

4628983 (E.D.N.Y. Sept. 15, 2014) (requiring "a report under oath detailing the manner in which

they have complied with all terms of the permanent injunction").

*Finally*, Plaintiffs request that Defendants provide prompt notice of the injunction to any

individual or entities involved in the distribution of Plaintiffs' textbooks.  Exh. A at ¶ 4

("Defendants shall provide notice of the Permanent Injunction to all individuals or entities who,

in active concert and participation with Defendants, have any involvement whatsoever in

importing, purchasing, reviewing, inspecting, storing, marketing, selling, renting, or distributing

textbooks published by Plaintiffs . . . .")  This provision is necessary to put parties in Defendants' distribution chain on notice that copies of Plaintiffs' titles in Defendants' possession (past or current) may be counterfeit so that they make take steps to guard against further distribution of counterfeits books and assist in removing such books from circulation.[6]

Other courts have ordered even stronger measures to notify parties of counterfeit products or instances of trademark infringement, including public press releases and statements on the offending party's website.  *See, e.g.*, *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 463 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014) (ordering corrective advertising campaign to explain the differences between the two parties' products); *Bracco Diagnostics, Inc. v. Amersham Health, Inc*., 627 F. Supp. 2d 384, 479 (D.N.J. 2009) (ordering defendants to "issue a press release, including on its website, regarding this Court's decision and the placement of corrective ads");  *CertainTeed Corp. v. Seattle Roof Brokers*, No. C 09-563 RAJ, 2010 WL 2640083, at *15 (W.D. Wash. June 28, 2010) (ordering defendant to post a hyperlink on his website linking to an electronic version of the order).  Plaintiffs' purpose is not to publicize Defendants' infringing activities, but rather to ensure that parties involved with Defendants are on notice of known risks.  Defendants are the ones in the best position to ensure that those individuals and entities receive that notice.

---

[6] Based on testimony adduced at trial regarding Defendants' business affiliations, such notice should be provided, at a minimum, to all entities owned or controlled by Mr. Smyres, as well as Defendants' known foreign sources of books, Thomas Cahill and ZX Trading; Defendants' primary trading platforms Amazon.com, Inc., Abe Books, Alibris, eCampus, Barnes & Noble, eBay; NorAm International Partners, Inc., which processes books Defendants buy and sell through Amazon; and John Connor, an alias.  March 27, 2018 Trial Tr. at 1365:17-1366:1; 1369:10-1370:24; 1392:25-1393:20.

## IV.    PLAINTIFFS ARE ENTITLED TO A DISPOSITION OF INFRINGING MATERIALS.

To prevent further infringement, Defendants should be ordered to surrender all suspected counterfeits of Plaintiffs' works through a disposition order.  Exh. A at ¶ 5(b), (c) (requiring Defendants to surrender to Plaintiffs "all textbooks currently within Defendants' possession, custody or control that Defendants suspect are or may be counterfeits of textbooks published by Plaintiffs," as well as any additional suspected counterfeits Defendants identify going forward).

"Both the Lanham Act and Copyright Act provide for the delivery and destruction of infringing products."  *Triangl Group Limited*, 2017 WL 2829752, at *10; *see also* 15 U.S.C. § 1118 (stating that where a trademark violation has been established, the court may order all counterfeits to be "delivered up and destroyed"); 17 U.S.C. § 503(b) ("As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . .").  The standard for granting this request mirrors the standard for granting injunctive relief.  *BMG Music v. Pena*, No. 05 Civ. 2310(RJD)(MDG), 2007 WL 2089367, at *6 (E.D.N.Y. July 19, 2007).

Forfeiture is especially appropriate where the defendant retains infringing items and the Court seeks to prevent future infringement.  *See, e.g.*, *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 570 (S.D.N.Y. 1995) (order to destroy all infringing articles in defendant's possession necessary given defendant's past infringement and retention of infringing articles); *Hilton v. Int'l Perfume Palace, Inc.*, No. 12-CV-5074 (JFB)(GRB), 2013 WL 5676582, at *14 (E.D.N.Y. Oct. 17, 2013) (finding destruction order warranted under Lanham Act where defendant "may possess a vast store of infringing goods" and Defendants did not provide a verifiable or reliable indicator "that its existing knock-offs will not be distributed"); *Entral*

*Group Int'l, LLC v. Honey Café on 5th, Inc.*, No. 05 CV 2290 NGG MDG, 2006 WL 3694584, at *8 (E.D.N.Y. 2006) (citing numerous cases).

### a.  Defendants should be ordered to surrender all counterfeit books.

Disposition of all counterfeits of Plaintiffs' works in Defendants' possession or control is warranted here.  As explained above, Defendants' past and continuing actions demonstrate a significant risk of future trademark and copyright infringement.  By ignoring Plaintiffs' notices and breaching the settlement agreement, Defendants raise significant concerns regarding their compliance with any injunction, thereby necessitating a disposition order in addition to injunctive relief.  *Musical Prods., Inc. v. Roma's Record Corp.*, No. 05 Civ. 5903(FB)(VVP), 2009 WL 3052630, at *8 (E.D.N.Y. Sep. 23, 2009) (finding forfeiture order warranted as defaulting defendants' disregard for plaintiffs' cease and desist letters raised concern over compliance with injunction).  Thus, the only remedy that can truly prevent future infringement is one that also requires Defendants to surrender to Plaintiffs any copies of potentially infringing books in their possession or control.  *See Hounddog Prods.*, 826 F. Supp. 2d at 634; *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08 CIV. 7497 KBF, 2014 WL 1883474, at *1 (S.D.N.Y. May 9, 2014) (granting proposed injunction for "the destruction or return of all unlicensed copies of" the infringing materials)

Ordering Defendants to deliver counterfeit and suspected counterfeit books for review will not in any way restrict Defendants' legitimate business.  *Hounddog Prods.*, 826 F. Supp. 2d at 634 (forfeiture order would "not deprive [the infringer] of any legitimate use of the motion picture, as any use of the film by [the infringer] would likely constitute infringement.").  "Destruction or forfeiture of the infringing copies should be ordered as a matter of course because the defendants have no right to possess them."  *Roma's Record Corp.*, 2009 WL

3052630, at *8; *c.f. Shen Mfg. Co., Inc. v. Suncrest Mills Inc.*, 673 F. Supp. 1199, 1207 (S.D.N.Y. 1987) (ordering defendant to offer up remaining infringing articles for destruction, even without a finding that defendant infringed intentionally or in bad faith).[7]

While Defendants' inventory may also contain legitimate books bearing the same titles, Plaintiffs' request is carefully tailored to minimize any unnecessary burden on Defendants. The proposed disposition order requires Defendants to surrender only those books that they "suspect are or may be counterfeits of textbooks published by Plaintiffs." Exh. A at ¶ 5(b), (c). The order further recognizes that Plaintiffs will return to Defendants books Plaintiffs determine are not counterfeit. The requested relief thus balances the significant need to purge Defendants' inventory of counterfeits with Defendants' ability to conduct legitimate business. *C.f. Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F. Supp.2d 952, 968 (S.D. Ohio Feb. 16, 2005) (ordering as part of injunctive relief that defendant turn over all articles bearing plaintiffs' marks in its possession to plaintiffs for examination, and that plaintiffs would then return items deemed neither counterfeit nor unauthorized). Ample trial evidence demonstrated that this is precisely the process other distributors voluntarily follow to ensure that their inventory is authentic. *E.g.*, March 27, 2018 Trial Tr. at 1247:17-1250-7; March 28, 2018 Trial Tr. at 1662:5-20.

### V.    Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court enter a Partial Final Judgment and Permanent Injunction, including an order for disposition of infringing

---

[7] Paragraphs 5(b) and (c) also require Defendants to identify their sources for books that Plaintiffs confirm are counterfeit. This step is also necessary to assess, over time, whether Defendants continue to purchase from known counterfeit sources and to assist in Plaintiffs' ongoing anti-piracy efforts.

materials, in the form provided in the attached Exhibit A.  Such measures are justified and necessary to ensure that Defendants cease their infringing activities and cause no further harm to Plaintiffs.


Dated: April 23, 2018                    By:      _/s/ Jeffrey M. Gould_____
                                                  Matthew J. Oppenheim
                                                  Jeffrey M. Gould
                                                  Julie C. Chen
                                                  Corey Miller
                                                  OPPENHEIM + ZEBRAK, LLP
                                                  5225 Wisconsin Avenue NW, Suite 503
                                                  Washington, DC 20015
                                                  Tel: 202.480.2999
                                                  Fax: 866.766.1678
                                                  *Attorneys for Plaintiffs*